Kansas City v. Field.

## KANSAS CITY v. RICHARD H. FIELD, Appellant.

Division Two, March 30, 1917.

1. **JUDGMENT: Execution After Ten Years.** Execution cannot issue in any case after the expiration of ten years from the date the unrevived judgment was rendered.

2. ———: ———: **Special Tax Bill: City Charter: Paramount Statute.** And though the judgment was based upon a benefit assessed against a lot as its share of the cost of a public improvement and the city charter says such judgment shall be a lien until the assessment is paid, such charter provision must yield to the paramount authority of the State statute, and execution cannot issue after the period of ten years mentioned in the statute has expired.

3. ———: ———: **Matter of General Policy.** Whether an execution can be issued upon an unrevived judgment after ten years is a matter pertaining to the general laws and policy of the State, and not one relating strictly to municipal affairs or coming under municipal control. And although the judgment grows out of an assessment of the costs of a public park against lots within the benefit district, and the city charter prescribes as the method of enforcing such assessment the judgment of a court of general jurisdiction, yet that judgment, like any other of such a court, is controlled by the statute, and an execution based on it must follow the course of other executions issuing out of such courts.

4. ————: ————: **Effect of Appeal.** A judgment expires by limitation in ten years after it is rendered in the circuit court, whether appealed from or not. The statute (Sec. 1912, R. S. 1909) says that the period of ten years is to be counted "from the date of the original rendition" of such judgment.

5. ———— : ————: ————: **Supersedeas.** An appeal does not stay a judgment, or stay the issuance of execution thereon. It is the *supersedeas* statute which, upon condition, stays a judgment pending an appeal upon the appellant's making and filing the requisite bond; and if a judgment be not suspended or stayed by a *supersedeas* bond, it continues, pending an appeal, in full force and vigor, and execution may issue.

6. ————: ————: ————: **Ten Years After Affirmation.** Where the judgment was affirmed on appeal on June 30, 1903, the mandate issued out of the appellate court on July 11, 1903, and was filed in the circuit court on July 12, 1903, an execution issued on July 12, 1913, was issued ten years and twelve days after the judgment was affirmed, and even if it be admitted that the statute was tolled by the appeal, and in any view of the case, the execution should be quashed.

Appeal from Jackson Circuit Court.—*Hon. Joseph A. Guthrie,* Judge.

REVERSED AND REMANDED (*with directions*).

*Gage, Ladd & Small* and *R. H. Field* for appellant.

(1) The execution was unauthorized and void because not issued within ten years from June 19, 1900, the date of the original rendition of the judgment. R. S. 1909, sec. 2133; George v. Midaugh, 62 Mo. 549; Goddard to use v. Delaney, 181 Mo. 571; R. S. 1909, sec. 1912; Martin v. St. Louis, 139 Mo. 260; Eysell v. St. Louis, 168 Mo. 607; St. Louis v. Realty Co., 175 Mo. 63; Dreyer v. Dickman, 131 Mo. App. 660; Dorland v. Smith, 93 Cal. 120; New York v. Colgate, 12 N. Y. 140. (2) The judgment or order for the recovery of the benefit assessment in this proceeding, against appellant's lands, was conclusively presumed to be paid and satisfied, when the execution was issued, because more than ten years had elapsed, "after the date of the original rendition thereof," with no revival of the

judgment nor any payment thereon within ten years before the issue of the execution. R. S. 1909, sec. 1912. And see, on the presumption of payment, prescribed in section 1912: Davis v. Carp, 258 Mo. 687; Cobb v. Houston, 117 Mo. App. 645; Chiles v. School District, 103 Mo. App. 240. See also: Gaines v. Miller, 111 U. S. 399. The presumption of payment of judgments, created by the provision in section 1912 of the Revised Statutes, is a rule of evidence, in legal effect, the full equivalent of proof of actual payment of a judgment. It is more. It is a presumption that cannot be rebutted by counter proof, that the judgment has not been paid; not even by proof of a solemn admission of the judgment debtor that the same has not been paid. This was said by this court of a like statute. Baker v. Stonebraker's Adm., 36 Mo. 349. And the like presumption of payment has elsewhere been applied to judgments, in rem and for taxes, which were made a lien until paid. Fisher v. Meyer, 67 N. Y. 74; In re Asher's Estate, 202 Pa. St. 422, 90 Am. St. 658; Carter v. Turnpike Co., 208 Pa. St. 565; Hayes Appeal, 113 Pa. St. 380; Brian v. Tims, 10 Ark. 597. (3) The fact that the city has received payment from other persons on other pieces of property, within ten years before the date of the execution, is immaterial to the issue here on the assessment against appellant's property on which the city claims no payment: Because (a) as said by this court in Kansas City v. Block, 175 Mo. 443, "the judgment is not an entirety, the interests of the parties are independent of each other;" and (b) because no payment is "entered upon the record" of the judgment. A payment on the judgment, unless "duly entered on the record thereof," does not save the judgment from the statute. R. S. 1909, sec. 1912. (4) The general statute cited applies to the adjudication, for the recovery of the special benefits in this proceeding, whether it be considered a judgment or only an order of the court, because said section 1912 expressly includes "every judgment, order or decree

of any court of record.'' Plum v. Kansas City, 101 Mo. 532; Shickle v. Watts, 94 Mo. 411, 420; Lafayette Company v. Wonderly, 92 Fed. 316. (5) The circuit court proceeding, in this action, as provided for in the Kansas City charter, is a judicial proceeding from start to finish. Kansas City Charter, Annotated 1898, art. 10, secs. 11 to 17. (6) Section 17, article 10, of said city charter expressly names the adjudication for the recovery of the benefits assessed in this proceeding a ''judgment,'' and provides for its enforcement by ''execution'' and not otherwise. Being made enforcible by execution, the adjudication is, in substance and effect, indisputably a judgment. St. Louis v. Realty Co., 259 Mo. 126; Kansas City v. Ward, 134 Mo. 183; Plum v. Kansas City, 101 Mo. 532. (7) And such adjudication is fortified against attack, both collaterally and on appeal, because it is a judgment in a judicial proceeding. Kansas City v. Plum, 101 Mo. 531; Leonard v. Sparks, 117 Mo. 115; Kansas City v. Burk, 118 Mo. 309, 327; Kansas City v. Duncan, 135 Mo. 517; Kansas City v. Bacon, 147 Mo. 275; Martin v. St. Louis, 139 Mo. 260; Connors v. St. Joseph, 237 Mo. 613; Kansas City v. Mastin, 169 Mo. 88; Robinson v. Levy, 217 Mo. 513; Skillman v. Clardy, 256 Mo. 321; Kansas City v. Block, 175 Mo. 443; Brunn v. Kansas City, 216 Mo. 115. (8) And this judgment for benefit assessments is subject to the general statutes of limitation. Dorland v. Smith, 93 Cal. 120; Colgate v. New York, 12 N. Y. 140; Donnelly v. Brooklyn, 121 N. Y. 18; Dousman v. St. Paul, 23 Minn. 394; Duncan v. Ry. Co., 22 Mo. App. 614; Martin v. St. Louis, 139 Mo. 260. And is subject to the same presumption of payment as ordinary judgments. Fisher v. Meyer, 67 N. Y. 74; In re Asher's Estate, 202 Pa. St. 422; Carter v. Turnpike Co., 208 Pa. St. 565. (9) The fact that the city charter might have made this proceeding administrative by its own officers, wholly outside of the State agency of the circuit court, does not render the circuit court proceeding provided, any the less a judicial proceeding, nor any the

less subject to the State statutes concerning judgments and executions. Skillman v. Clardy, 256 Mo. 320; Haag v. Ward, 186 Mo. 326-344; Robinson v. Levy, 217 Mo. 513. (10) The general statutes concerning judgments and executions apply to special judgments and special executions. R. S. 1909, sec. 2172; Smith ex rel. v. Rogers, 191 Mo. 344; Skillman v. Clardy, 256 Mo. 320; Kansas City v. Woerishoeffer, 249 Mo. 26; Plum v. Kansas City, 101 Mo. 530; Groner v. Smith, 49 Mo. 323; Eyssell v. St. Louis, 168 Mo. 607; Duncan v. Railroad, 22 Mo. App. 614; Haag v. Ward, 186 Mo. 326-344; Kansas City v. Smith, 238 Mo. 338; Railroad v. Swan, 120 Mo. 35; Crittenden v. Leitensdorfer, 35 Mo. 243; Green v. Dougherty, 55 Mo. App. 217. (11) This court has been uniformly against inferring any exception to such comprehensive general statutes. Bolton v. Landsdown, 21 Mo. 400; Crittenden v. Leitensdorfer, 35 Mo. 243; Lafeyette Co. v. Wonderly, 92 Fed. 313; Plum v. Kansas City, 101 Mo. 530; State ex rel. v. Dirckx, 211 Mo. 581; Skillman v. Clardy, 256 Mo. 320. (12) The city could have had the execution issued in 1904, for all of the benefits assessed, on and after default upon the first installment of the benefits assessed. Last clause Sec. 21, art. 10, City Charter, Annotated 1898, p. 182; Jaicks v. Murrill, 201 Mo. 101. (13) The general statute ran on the judgment "from the date of the original rendition thereof," notwithstanding the judgment for special benefits was payable in successive annual installments. In point: Dreyer v. Dickman, 131 Mo. App. 660. See also: George v. Midaugh, 62 Mo. 549; Cobb v. Houston, 117 Mo. App. 645. (14) The Mulkey appeal did not suspend nor interrupt the running of the general Statute of Limitations on the judgment "from the date of the original rendition thereof;" and the time of the pendency of that appeal is not to be deducted in computing the ten-year limitation against execution on the judgment. Christy v. Flanagan, 87 Mo. 670; Green v. Dougherty, 55 Mo. App. 217; Eysell v. St. Louis, 168 Mo. 620; Deposit Co. v. Schuchman,

189 Mo. 472; Ins. Co. v. Hill, 17 Mo. App. 590; Richard-son v. Harrison, 36 Mo. 96; Dorland v. Smith, 93 Cal. 120. And this is plainly so, because the only thing the statute permits to extend the life of the judgment, "after ten years from the date of the original rendition there-of," is a revival of the judgment or a payment thereon. R. S. 1909, sec. 1912. (15) The Kansas City charter, not having prescribed any time or condition after which the judgment should be presumed paid, nor any limit of time within which execution should issue thereon, the cited general Statutes of Limitation and presump-tion of payment apply to such judgments and executions Pleadwell v. Glass Co., 151 Mo. App. 63; Plum v. Kansas City, 101 Mo. 530; Railroad v. Swan, 120 Mo. 35; Const. Co. v. St. Louis, 231 Mo. 591; Kansas City v. Smith, 238 Mo. 338; Skillman v. Clardy, 256 Mo. 319. (16) And *a fortiori,* this proceeding is subject to the general Statute of Limitation, because the State Con-stitution, under which Kansas City framed and adopted its charter, in terms made Kansas City and its charter-making "subject to the Constitution and laws of the State." Constitution, art. 9, sec. 16; Mullins v. Kansas City, 188 S. W. 193; Haag v. Ward, 186 Mo. 326.

*J. A. Harzfeld, Jay M. Lee, Delbert J. Haff, Edwin C. Meservey* and *Charles W. German* for re-spondent; *William C. Michaels* of counsel.

(1) The Kansas City charter provisions control the issuance of execution to enforce the collection of assess-ments involved in this case. Murnane v. St. Louis, 123 Mo. 479; Kansas City v. Scarritt, 127 Mo. 642; St. Louis v. Gleason, 15 Mo. App. 25, 93 Mo. 33; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458; St. Louis v. Dorr, 145 Mo. 466; Stevens v. Kansas City, 146 Mo. 460; Kansas City v. Bacon, 147 Mo. 259; Meier v. St. Louis, 180 Mo. 391; Morrow v. Kansas City, 186 Mo. 675; St. Louis v. Liessing, 190 Mo. 464; St. Louis v. DeLassus, 205 Mo. 578; Paving Co. v. Meservey, 103 Mo. App. 186; Construction Co.

v. Coal Co., 205 Mo. 63; Brunn v. Kansas City, 216
Mo. 108; Sec. 3707, R. S. 1899; Stanton v. Thompson,
234 Mo. 11; State ex rel. v. Seehorn, 246 Mo. 556;
Paving Co. v. Harvard, 248 Mo. 280; Sec. 7181, R. S.
1909; Kansas City v. Woerishoeffer, 249 Mo. 1; Pav-
ing Co. v. Field, 134 Mo. App. 668; Charter of Kansas
City 1898, sec. 8 to 28, art 10; Charter of Kansas City
1909, sec. 8 to 28, art. 13; Smith v. Mitchell, 33 Am.
Dec. 119; 5 Words and Phrases, p. 4165; Riddlesbarger
v. Ins. Co., 74 U. S. 386; Sec. 4944, R. S. 1909; St Louis
v. Realty Co., 259 Mo. 126; Kansas City v. Land Co.,
260 Mo. 395; 23 Cyc. 1467; Moore v. Williams, 129 Ala.
329; Van Rensslaer v. Wright, 25 N. E. 3; Sheldon v.
Mirick, 39 N. E. 647.    (2)   Ten years had not elapsed
between the rendition of the judgment and the issuance
of the execution.    State ex rel. v. Gill, 84 Mo. 248;
Kansas City v. Hennegan, 152 Fed. 249; Paving Co.
v. Meservey, 103 Mo. App. 186.

FARIS, J.—This is an appeal from the circuit
court of Jackson County, wherein upon motion to that
end, the court refused to quash an execution which had
been levied upon the land of movant, who is appellant
here.

On the *19th day of June, 1900*, as the result of a
certain proceeding to condemn lands for a park to be
known as West Terrace Park, and to assess benefits to
produce a fund to recoup the city for its outlay in pay-
ment for the condemned lands, judgment was rendered,
among others against the lands of movant.   Movant did
not appeal from the latter judgment, but one Catherine
Mulkey appealed on her part from the judgment assess-
ing benefits against her land, which appeal was decid-
ed against her by this court *on the 30th day of June,
1903.*   [See Kansas City v. Mulkey, 176 Mo. 229.]   Man·
date was issued by this court in the last-mentioned ap-
peal *on the 11th day of July, 1903.*   The execution here-
in sought to be quashed was issued *on the 12th day of
July, 1913.*   The mandate from this court was filed in

the circuit court of Jackson County *on the 13th day of July, 1903.* The motion to quash the execution filed by movant, so far as it is pertinent, is, caption and signature of counsel omitted, as follows:

"Now, on this 30th day of July, 1913, comes Richard H. Field, and states and shows to the court:

1. That he is and was at the times hereinafter named, the owner of the following described real estate in Kansas City, Jackson County, Missouri, to-wit:

"The west fifty-two feet of the south sixteen feet of Lot No. Thirteen and the west fifty-two feet of Lot No. Fourteen, Coffman's Addition.

"2. That, on July 12, 1913, the clerk of the circuit court of Jackson County, Missouri, issued and delivered to the sheriff of said county an execution of that date on a judgment of said circuit court at Kansas City, in the above entitled cause, dated and rendered June 19, 1900, for $92.83, against the above described real estate, and also for other sums against other lots and parcels of real estate in said city described in said execution in which said Richard H. Field was and is in no wise interested or concerned.

"3. That said execution or the record in the case does not show that said execution was issued on a live judgment, or that the clerk of said court had any right or authority to issue said execution against the said real estate of the maker of this motion.

"4. That said execution was issued after the expiration of ten years from June 19, 1900, the date of the original rendition of said judgment; and said judgment had not been revived, and no payment had been made on said judgment against the above described real estate at any time within ten years before July 12, 1913, the date of said execution.

"Wherefore, the said Richard H. Field moves the court to quash said execution as to his said real estate above described, and for judgment for costs hereon."

In passing upon this motion the learned court *nisi* made a special finding of facts which will serve to make

clear the ruling facts of the case. This special finding of facts is as follows:

"1. That Richard H. Field is and was the owner of the land described in his motion filed in this cause to quash the execution issued herein.

"2. That on July 12, 1913, the clerk of the circuit court of Jackson County, Missouri, issued and delivered to the sheriff of said county an execution of that date on the judgment of this court in this case, dated and rendered June 19, 1900, for $92.83, against the said described real estate, and also for other sums against other lots and parcels of real estate in said city, described in said execution, in which said Richard H. Field was and is in no wise interested or concerned.

"3. That said execution was issued after the expiration of ten years from June 19, 1900, the date of the original rendition of said judgment, and that said judgment had not been revived, and that no payment had been made on said judgment against the said described real estate of Richard H. Field at any time within ten years before July 12, 1913, the date of said execution.

"4. The court further finds that this cause was appealed by certain parties to the Supreme Court of Missouri, which court affirmed the judgment of the circuit court on June 30, 1903, and the mandate of the said Supreme Court, dated July 11, 1903, was filed with the clerk of the circuit court of Jackson County, Missouri, at Kansas City, Missouri, on July 13, 1903.

"Thereupon, the court being fully advised in the premises, overrules the said motion of Richard H. Field, to which ruling of the court the said Richard H. Field excepts."

If facts in addition to the above are found necessary to make clear what we find it necessary to say, we will set them out in the opinion, infra.

I. The briefs are able and extremely voluminous, covering not only the points which seem to control the

case, but also many interesting points afield. However, the two points, decision of which seems to settle the case, are these: (a) Does the general Statute of Limitations so far bar a judgment such as that here as to forbid after ten years the issuance of an execution thereon, and (b) did the appeal of Catherine Mulkey have the effect to extend the time, or toll the statute for the period that such appeal was pending here? For convenience we sometimes refer to section 1912, infra, as a Statute of Limitations. Whether it be so, or merely the concrete statement of a rule of evidence, we do not decide.

*Life of Judgment.*

That an execution may not issue upon an ordinary judgment after ten years, is well-settled. For the following statute so ordains, to-wit:

"Every judgment, order or decree of any court of record of the United States, or of this or any other State, territory or country, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever." [Sec. 1912, R. S. 1909.]

Another general statute cited and urged by movant as apposite, reads thus:

"Executions may issue upon a judgment at any time within ten years after the rendition of such judgment." [Sec. 2133, R. S. 1909.]

It is urged by respondent, however, that neither of the above statutes is applicable, but that the matter is controlled by an alleged applicable provision of the charter of Kansas City, which in full reads thus:

"After the judgment of confirmation of such verdict and proceedings, the clerk of said court shall certify under the seal of said court, to two copies of said verdict, one of which copies he shall deliver to the city treasurer and one to the city auditor, *and said assessments for benefits, if any, against private property shall be a lien from the date of the taking effect of the ordinance in pursuance of which said assessments are made and said proceedings instituted, and shall attach to the several lots or parcels of land so assessed with benefits as aforesaid; and said lien shall continue against each lot or parcel assessed until the assessment against such lot or parcel has been paid or collected in full, both principal and interest.* No assessment shall be defeated or affected by any irregularity affecting any other assessment or from the rendering of any other assessment invalid in whole or in part." [Sec. 20, art. 10, Charter 1898, Kansas City.]   (We have italicised the particular part of the section supra upon which respondent relies.)

Does this charter provision so far control as that execution may issue after ten years? Passing for the present the obvious query whether the language of the charter quoted supra carries, inevitably, the meaning which respondent puts on it, we do not think the provision even as construed by respondent has the effect claimed for it. It is self-evident that since Kansas City is in Jackson County and therefore an integral component of the State of Missouri, the general laws of the State run there and will control unless the Constitution, or other laws passed pursuant thereto, have abdicated this right of control. If this right of control has been delegated it comes from the below quoted pertinent provisions of our statutes. Appositely pertinent parts

of section 9703, *following the Constitution itself* (Constitution, sec. 16, art. 9.), provide:

"Any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, by causing a board of thirteen free-holders, who shall have been for at least five years qualified voters thereof, to be elected by the qualified voters of such city at any general or special election, which board shall, within ninety days after such election, return to the chief magistrate of such city a draft of such charter signed by the members of such board, or a majority of them; . . . but such charter shall always be in harmony with and subject to the Constitution and laws of the State."

By the next following section it is provided that after the adoption and ratification thereof such charter "shall be and constitute the entire organic law of such city and shall supersede all laws of this State then in force in terms governing or appertaining to cities having one hundred thousand inhabitants or more." [Sec. 9704, R. S. 1909.]

It will be noted that the Legislature exercised a large degree of care and caution in providing precisely what laws should be superseded upon the adoption of a charter by a city authorized to do so. Such supersession is expressly limited to such laws as *"in terms,"* that is, specifically, "govern and appertain to cities having one hundred thousand inhabitants or more." But we have had in many cases to construe how far this provision of the statute superseded laws of the State or municipality which would otherwise govern and control. [McGhee v. Walsh, 249 Mo. 1. c. 280; Mullins v. Kansas City, 268 Mo. 444.] In the case of McGhee v. Walsh, supra, this Court in Banc said:

"The city of Kansas City is organized under a special charter pursuant to the provisions contained in the organic law (Sec. 16, art. 9, Constitution), and the statutory authority conferred by an act of the General

Assembly, approved March 10, 1887 (Laws 1887, pp. 42-51), and divers amendments thereto, subsequently passed. The charter under which this city is now working, was adopted and went into effect September 4, 1908. By the statute such charter when it went into effect automatically superseded the statutory provisions for the government of cities of the class into which by its population the Legislature had placed Kansas City (Sec. 6360, R. S. 1899); subject, however, to the limitation, that the provisions of such charter should be in harmony with the Constitution and laws of the State. [Sec. 6359, R. S. 1899.] That such is the legal effect of the adoption of such a charter, aside from the statute (which is lucid and clear), has been judicially determined by this court in several cases which came before us. [Kansas City v. Marsh Oil Co., 140 Mo. l. c. 471; St. Louis v. DeLassus, 205 Mo. l. c. 585; St. Louis v. Liessing, 190 Mo. l. c. 480.]"

Likewise in the Mullins case, supra, this division said: "It will be noted that the latter section does not say that such charter *shall supersede all laws of this State,* and stop there, but it modifies and limits the laws so superseded thereby as *laws then in force in terms governing* cities having 100,000 inhabitants or more. In short, the limitation of said section is as to a particular sort of laws, not general, but such as govern and appertain to cities having 100,000 inhabitants or more. But that is not all of the indicia which point to the meaning and proper construction of said section 9704. The latter section limits the laws which the charter supersedes to the entire organic law of such city. We know that, under our system and manner of speaking in this State, we apply the term 'organic law' of the cities of the several classes to the articles and chapters of the statutory laws which govern and regulate the several classes of cities, towns and villages; that in a way such articles and chapters delimit and fix the powers of such cities, towns, and villages in a manner similar to that in which the Constitution of the State sets bounds

to the powers of the three co-ordinate branches of State government. Nor is this all; there is, as we view it and construe it, an express exception to the power conferred on such cities to frame a charter. This exception is that the provisions of such charter shall be 'subject to the Constitution and laws of this State,' and consistent therewith. [Sec. 9703, R. S. 1909.] This provision and limitation refers to all laws of the State, *except those then in force in terms governing and appertaining to cities having 100,000 inhabitants or more.*"

In the light of the provisions of our statute, which permits the issuance of an execution at any time within ten years after the rendition of a judgment (Sec. 2133), and of that which forbids the issuance after ten years of any execution upon any judgment, order or decree of any court of record (Sec. 1912, supra), we do not think there can be any doubt that the execution issued below in the instant case ought to have been quashed. [Eyssell v. St. Louis, 168 Mo. 607; St. Louis v. Annex Realty Co., 175 Mo. 63.]

Many cases are cited to us why this view should not be taken, but these cases but follow the fairly ancient case of State ex rel v. Field, 99 Mo. l. c. 356, wherein it was ruled that the "matter of assessing damages and benefits for grading and regrading streets naturally falls within the domain of municipal government," and that a general law relating to municipal affairs may be in effect repealed by the adoption of a charter. To this aggregate of charter powers which fall naturally into the domain of municipal government may be added the method of "collecting the cost of street improvements." [Murnane v. St. Louis, 123 Mo. 479; Kansas City v. Marsh Oil Co., 140 Mo. 458; Kansas City ex rel. v. Scarritt, 127 Mo. 642; Kansas City v. Ward, 134 Mo. 172; St. Louis v. Dorr, 145 Mo. 466; Kansas City v. Bacon, 147 Mo. 259.] In the case of Kansas City v. Marsh Oil Co., supra, at page 471, the general rule by which we may distinguish matters of purely municipal control

from matters affecting the fixed general policy of the State, is thus laid down:

"So long as Kansas City, under its special charter, does not invade the province of general legislation, or attempt to change the policy of the State as declared in her laws for the people at large, it will not be held to be out of harmony with such laws, notwithstanding the provisions of the special charter may be different from the general statutes prescribed for the government of other cities in their local affairs."

We think it is so clear as to render exposition unnecessary, beyond the mere statement of the proposition, that the question whether an execution can be issued upon an unrevived judgment after ten years, is one pertaining to the general laws and policy of the State, and not a question relating strictly to municipal affairs. It may be that some other method of collecting an assessment of the character here confronting us (St. Louis v. Brinkwirth, 204 Mo. 280) could have been devised, and thus have rendered a judgment upon the real property unnecessary. With that question we are not here concerned. Appellant does not question the inherent validity of the judgment; neither will we do so. The city saw fit to provide for a judgment of a court of record of general jurisdiction. That judgment became, so far as the point before us is concerned, like any other judgment, and execution thereon must follow the course of any other execution. If the issuance of an execution can be delayed for thirteen years, it can be delayed for thirty years, or three hundred years, which would be onerous in the case of the instant judgment which bears interest at the rate of *fifteen per cent per annum*. Granting for argument's sake the point which we do not meet here, and do not decide, that a necessity, rationally explainable, exists for the continuance of a lien beyond the general statutory limit, no reason can be seen for delaying the issuance of an execution for more than ten years. With such a rule differing so vitally and radically from the rule elsewhere in the State, and

elsewhere in Jackson County even, no man could buy or sell real estate, nor could any lawyer pass upon title to real estate, with either satisfaction or certainty. Such a holding would result in the digging of pits for the feet of the unwary. The laws of the State announcing the general policy of the State create a conclusive presumption of payment of a judgment after the expiration of ten years, and forbid the issuance of an execution upon such an ancient judgment after that period has elapsed (Sec. 1912, supra) and since such a matter is not necessarily one of strictly municipal concern, no city has the right to adopt a charter or pass an ordinance in contravention of a plain statute announcing that policy.

The provision that fifteen per cent. interest may be charged upon such a judgment as a penalty—by analogy upheld for reasons that *arguendo* seem sufficient (Brunn v. Kansas City, 216 Mo. 108)—would or easily might, in a case like this, prove confiscatory. The judgment in the instant case has trebled, and is fast quadrupling.

We have approached the question from the point of view of respondent, contradicted by appellant most strenuously, that the quoted italicised part of section 20 of article 10 of the Kansas City Charter is in fact in contravention of the general statutes of the State. Counsel for appellant, as we understand them, urge that it is not opposed to, but in harmony with, the general laws. If it is not there is not and has not been any question before us, and the execution ought to be quashed for that reason, in addition to the one we have found ample to this end.

II. Which conclusion brings us to a consideration whether section 1912 is tolled by the fact of an appeal, wherein, and in final result, the judgment appealed from is affirmed. The language of the statute under discussion is that the period of Life of Judgment: Effect of Appeal. ten years is to be counted "from the date of the original rendition" of such judgment, and that from and after the expiration of

such period no execution may issue thereon.   If the
word "original" had not been used, there might be some
doubt about the matter.  For without this word a debat-
able question can be mooted as to time of the *rendition*
of a judgment when such judgment is appealed from,
but from the use of the word original we have no great
difficulty in concluding that no execution may issue upon
an unrevived judgment, if ten years has elapsed from
the date of the rendition of such judgment by the circuit
court, regardless of whether such judgment was appeal-
ed from or not.  [George, v. Middough,. 62 Mo. 549;
Smith v. Steel, 81 Mo. 455; Mullen v. Hewitt, 103 Mo.
639.]  This view is not only according to the letter of the
statute, but follows the reason of the thing as illuminat-
ed by analogy.  For an appeal does not stay a judgment,
or stay the issuance of an execution thereon.   It is the
*supersedeas* statute which, upon condition, stays a judg-
ment pending an appeal upon the appellant's making
and filing bond of the requisite sort and sum.  If a judg-
ment be not suspended or stayed by a *supersedeas* bond,
it continues, pending an appeal, in full force and vigor.
If it be not in fact *rendered* till an appeal is finally de-
termined, it would be difficult to explain satisfactorily
why execution pending appeal can be bottomed on a
judgment which has never been *rendered*.   Moreover,
such a view, the indefinite delays incident for one or an-
other reason upon an appeal regarded, would have the
effect upon respondent's view being taken, to make
some judgments continue in force without being re-
vived, for eleven years; while others would be good for
fifteen years or more.   We conclude that a judgment
expires by limitation, *caeteris paribus,* in ten years
after it is rendered in the circuit court, whether such
judgment be appealed from or not.

In passing we may say that upon no view can it be
maintained in the instant case that the statute had not
so far run as to forbid the issuing of an execution here.
For the judgment *nisi* in the instant case was affirmed

here *on the 30th day of June, 1903,* but the execution here sought to be quashed *did not issue till July 12, 1913,* ten years and twelve days thereafter. So upon any view, the contention of respondent that ten years had not elapsed between the rendition of the judgment and the issuance of the execution under fire, must be overruled.

It results that this case must be reversed and remanded with directions to the circuit court to sustain the motion to quash the execution. Let this be done. All concur.