In re EAST BOTTOMS DRAINAGE & LEVEE DISTRICT; H. M. MERIWETHER et al., Appellants, v. KANSAS CITY.

In Banc, December 18, 1924.

1. **DRAINAGE DISTRICT: In Large Cities.** The general drainage and levee statutes do not authorize a drainage and levee district to embrace within its boundaries lands within a city of one hundred thousand or three hundred thousand inhabitants or more.

2. ———: ———: **Freeholders' Charter.** The construction of sewers, drains and levees within a city is peculiarly a matter of local municipal concern, and where the freeholders' charter, which the inhabitants of a city (such as Kansas City) are authorized by the Constitution to frame and adopt for its government, provides for drains to carry off and levees to protect against overflow waters, the statutes do not contemplate that a drainage and levee district organized under them may include lands within such city. Although such district is a public corporation and the construction of drains and levees is in one sense a matter of general public concern, sewers and drains, and levees also which accomplish the same purpose, are matters of peculiar, essential and elementary local municipal concern, and the statutes relating to the formation of drainage districts were not intended to supplant and replace the provisions of a freeholders' charter investing the city with power to construct sewers, drains and levees.

3. ———: **Constitutional Charter Provisions.** The provisions of the charter of Kansas City providing for the creation of levee and drainage districts in the city by ordinance, the drains and levees to be paid for out of the general fund of the city or by special assessment of benefits upon the private lands of the district, are not unconstitutional, either (a) as a denial of due process of law,
305 Mo.—37.

in that they authorize the Board of Public Works to estimate and calculate the cost of construction without notice or hearing, or (b) because the jury must find the cost exactly as determined by the board, or (c) because the court must render judgment for benefits based on such fixed estimate, or (d) because such provisions allow the jury to assess the amount of the benefits to the city at large, or (e) because they allow such a district to be created summarily by ordinance alone. The property owners, by the charter provisions, are not to be assessed at any greater sum than their land is benefited by the improvement, and the jury is required to first estimate the amount of the benefit to the city at large and then the benefit to each lot, exclusive of buildings, and if the total benefits exceed the estimated cost a pro rata reduction in the assessment against private property must be made, and the property owners are given notice, and a trial by jury for the assessment of benefits and damages is provided for.

4. ———: ———: **Excessive Cost: Municipal Discretion.** A contention that the cost of drains and levees, owing to the topography of the land, will be greatly increased, if the city proceeds to levee and drain the lands within its limits, separately from the swamp and overflow lands lying outside of such limits, is a matter of expediency and judgment, on the part of the city, in the exercise of its charter powers, and has no bearing on the validity of the charter provisions or of ordinances enacted in pursuance thereto.

5. ———: **Judgment of Dismissal.** Where landowners have filed a petition to incorporate a drainage district to embrace land both within and without a large city, the court, upon a proper ruling that the lands within the city cannot be legally included within the district, should not peremptorily dismiss the action, but should give the petitioners opportunity to show that a legal and satisfactory district may be formed without including the city lands.

Citations Pertaining to Subjects of Headnotes. Headnotes 1 to 5, Drains: 1 and 2, 19 C. J. par 18; 3, 19 C. J. par. 207; 4, 19 C. J. par. 15; 5, 19 C. J. par. 117 (1926 Anno). Headnotes 1 to 4, Levees: 1, 36 C. J. par. 28; 2, 36 C. J. pars. 26 (1926 Anno), 28; 3, 36 C. J. par. 55; 4, 36 C. J. par. 28.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

REVERSED AND REMANDED.

*Ball & Ryland* for appellants.

(1)   Article XII and Ordinance No. 41710 are unconstitutional and void, and neither of them constitute any

valid reason for denying petitioners a hearing. Mo. Constitution, secs. 20 and 30, art 2; U. S. Constitution, sec. 1, Amendment XIV; Mo. Constitution, sec. 16, art. 9 and amendments; Bueslog v. Gulfport, 72 So. 896. (2) Said article of said charter and said ordinance invade the policy of the State, are general legislation, and are not in harmony with the Constitution and laws of the State. R. S. 1909, chap. 41, sec. 5496 et seq.; R. S. 1919, chap. 28, sec. 4378 et seq.; State ex rel. v. Police Commrs., 80 Mo. App. 206; Ewing v. Hoblitzelle, 85 Mo. 64; Moberly v. Hoover, 93 Mo. App. 663; St. Louis v. Meyer, 185 Mo. 583; State ex rel. v. Telephone Co., 189 Mo. 83; Peterson v. Railroad, 265 Mo. 462, 480; State ex rel. v. Field, 270 Mo. 500; Mullins v. Kansas City, 268 Mo. 444; State ex inf. v. Koeln, 270 Mo. 187; Kansas City v. Field, 285 Mo. 276; State ex rel. v. Men's Club, 177 Mo. App. 571; City of Higbee v. Burgin, 197 Mo. App. 685; State ex inf. v. Albany Drainage Dist., 290 Mo. 33, 52; State ex rel. v. Little River Drain. District, 291 Mo. 267, 273; State ex rel. v. Miss. & Fox Drain. Dist., 292 Mo. 696, 704. See also the illuminating discussion by Court en Banc, and by two dissenting judges, Ordinance No. 39946, 252 S. W. 404. (3) Said Article 12 and said ordinance seek to make a legislative question of what the Constitution and laws of the State declare shall be a judicial question. Mo. Constitution, sec. 20, art. 2; R. S. 1919, chap. 28. (4) Said Article 12 of said charter and said ordinance seek to condemn and take land for private instead of public purposes. State ex rel. v. Wiethaupt, 231 Mo. 449, 470; State ex rel. v. West, 272 Mo. 304; In re Birmingham Drainage District, 274 Mo. 140; Morrison v. Morcy, 146 Mo. 543, 563; State ex rel. v. Kinder, 291 Mo. 267. (5) The court below misconstrued Chapter 28, Revised Statutes 1919, and all of it. (6) Property outside the levee district will inevitably be damaged by the building of the proposed dike. No provision has been or can be, under the charter, made to ascertain or pay it. Drainage District v. Ham, 275 Mo. 384. (7) "The pol-

icy of the State'' (authorities supra) has been continued by the Legislature. Laws 1921, pp. 293 to 304; Laws 1923, pp. 162 to 170.

*John B. Pew* and *Benj. M. Powers* for respondent.

(1) The provisions of the charter rather than the state statutes govern the construction of levees and drains within the city limits. (a) The construction of levees and drains within a city is a matter of local concern. Kansas City v. Field, 99 Mo. 352; Kansas City ex rel. v. Scarritt, 127 Mo. 642; Kansas City v. Ward, 134 Mo. 172; Kansas City v. Marsh Oil Co., 140 Mo. 458; Mound City Land & Stock Co. v. Miller, 170 Mo. 240; Kansas City v. Mastin, 169 Mo. 80; Stanton v. Thompson, 234 Mo. 7; Kansas City v. Boruff, 243 S. W. 167. (b) The policy of the State as expressed in its legislative enactments confines the applicability of levee and drainage district acts to rural territory. R. S. 1919, art. 8, chap. 28 (Secs. 4581 and 4582); R. S. 1919, secs. 7856, 7857, 7858, 7859; Laws 1921 (Extra Sess.) p. 110; R. S. 1919, sec. 4506. (2) Article 12 of the charter is valid and does not deny due process of law. (a) The common council has power to exercise its discretion in establishing the benefit district (the levee district). McMurry v. Kansas City, 283 Mo. 479; Kansas City v. Baird, 98 Mo. 215; Kansas City v. Smart, 128 Mo. 272; Kansas City v. Bacon, 147 Mo. 259, 273; French v. Barber Asphalt Co., 158 Mo. 534, 181 U. S. 324. (b) Parties in the benefit district have no right to be heard as to the determination of the total amount to be assessed, but only as to how it shall be spread over the benefit district. State ex rel. Tuller v. Seehorn, 246 Mo. 568; Kansas City v. Land Co., 260 Mo. 395, 241 U. S. 419; Kansas City v. Terminal Railway Co., 201 S. W. 541. (c) The charter does not seek to make the levee proceeding a legislative question at any point where it should be a judicial question. Charter, Art. 13, sec. 8. (d) The

condemnation of land for levees is for a public use. Kansas City v. Liebi, 252 S. W. 404; State ex rel. Kinder v. Little River Drain. District, 291 Mo. 267; Mound City Land & Stock Co. v. Miller, 170 Mo. 240; Morrison v. Morey, 146 Mo. 543.

RAILEY, C.—Appellants filed their petition in the Circuit Court of Jackson County to form a drainage and levee district under Articles I and IX of Chapter 28, Revised Statutes 1919. The petition is in due form, signed by the proper landowners in said proposed district, and asks the incorporation of 1723 acres of swamp, wet and overflowed lands lying in a contiguous body along the Missouri and Blue rivers, a part thereof being in the East Bottoms, within the corporate limits of Kansas City, and the remainder lying east of said city in Jackson County.

The city of Kansas City appeared in said cause and filed a motion to dismiss such petition or plea to the jurisdiction, on the ground that a portion of said land was within said city limits, and that said city had previously on March 24, 1922, as authorized by its freeholders' charter of 1908, enacted an ordinance, including said lands within its limits, in a levee and drainage district, wholly within said city, and that the circuit court had no authority or jurisdiction to incorporate said lands in said city with other lands outside thereof in the levee and drainage district, sought to be established by the petition filed in said circuit court; that, to construe the general statutes relied on as authorizing said proceeding, violates its charter and ordinances and violates the constitutional provisions giving such city the right to frame its own charter. The court below ruled for the city, and sustained said motion or plea and dismissed said petition, and the petitioners appealed to this court.

I. The real question before us is whether the circuit court had power or jurisdiction to incorporate a

drainage and levee district where part of the lands

**Scope of General Statutes.** sought to be included are in Kansas City, and part thereof outside of the limits of said city, in Jackson County, upon the petition of the landowners in such district.

Chapter 28, Revised Statutes 1919, has eleven articles relating to the general subject of reclaiming swamp lands by means of levees and drains. Several such articles relate to the incorporation of levee and drainage districts, as public corporations, upon the petition of the owners of contiguous swamp, wet and overflowed land filed in the circuit court or the county court of the county in which such lands are located. The petitioners in this case sought to establish a drainage and levee district by petition in the circuit court, under Articles I and IX of said Chapter 28. In none of the articles of said Chapter 28 is it expressly provided that upon said petition any such lands within the corporate limits of any city may be included in such district. But it is simply provided in general terms in said statutes, that contiguous swamp, wet and overflowed lands within one or more counties or townships in this State, may, upon such petition, be included in such district. Whether such districts are so incorporated by the circuit court, or by the county court, the levee or drains and other improvements intended to reclaim such wet and swamp lands are to be paid by assessments of benefits on all the lands in the district, including highways and railroads and railroad rights of way (and perhaps other public utility rights of way) according to the benefit they received from such levee and other improvements (Secs. 4390, 4611).

Article VIII of said Chapter 28 (Vol. II, R. S. 1919, p. 1487) provides for the incorporation of a joint district for draining or sewering "any area in the State of Missouri" (Section 4581) for the preservation of the public health, "if such area shall lie in part within and in part without the corporate limits of any city having a population of more than 300,000 inhabitants"—such cor-

poration to be formed by the filing of a petition by the
city or the county court, in the circuit court, and ratified
by a vote of the legal voters "resident in such area".

The expense for right-of-way and construction of the
drains is to be paid from a uniform "special drainage
tax" on all lands in the district, exclusive of highways,
not exceeding one-half of one per cent in any one year
on the assessed value of such land, or by bonds payable
out of the funds raised by such special drainage tax
(Secs. 4585, 4589).

Another provision in the Revised Statutes especially
relating to cities of 100,000 inhabitants or more, is Sec-
tion 7856, which authorizes such cities to contract "with
drainage districts or with other public corporations in
this or any adjoining state for co-operation or joint ac-
tion in building sanitary sewers . . . *and in con-
structing levees* along the bank of, or shortening, divert-
ing or otherwise improving any natural watercourse, to
prevent its overflow, where the same overflow is likely
to cause injury within the territorial limits of all the
districts or corporations so co-operating." So, Section
7857 provides that any such city (of 100,000 or more in-
habitants) may with the consent of any adjoining state,
and without the co-operation of any public corporation
of such state, condemn the necessary land, and construct
the necessary drains and levees, to protect property,
partly within the city and partly within such other state,
from floods and overflow and pay for same out of its
general fund or by the imposition of special taxes on
the lands in the city, within the district deemed benefited.

We have never had before us a case involving the
question whether lands within any city could be included
with other lands outside such city in a drainage or levee
district, under the provisions of Articles I and IX of
said Chapter 28, Revised Statutes 1919, or similar prior
statutes.

It is provided in such general statutes that in such
districts formed on the petition of the landowners, the

construction and control of drains and levees therein shall be determined by the vote of the owners of the land and rights of way in such district, and that each landowner have one vote for each acre of land owned by him (Secs. 4600 and 4381) and that preliminary expenses should be paid by a tax of not more than twenty-five cents per acre on each acre of land in the district (Sec. 4608). These provisions would seem to indicate that large tracts of land, at least one acre in extent, were contemplated as the lands which would compose such district, that is, agricultural or rural lands. Lands in cities are usually divided into lots much smaller than one acre, consequently, city landowners could not vote or have any voice in the control of such district or improvement therein, unless they owned one acre of land in such city, which would disfranchise, in all probability, the majority of landowners in such district, if within a city. It was for this reason, no doubt, that said Article VIII, which did provide for voting on a drainage district partly within the city, provided, that the vote should be by the legal voters without reference to whether he had any land or property at all. The scheme of the general drainage and levee laws seems to relate to farming and other lands outside of incorporated cities, except said Article VIII and Sections 7856 and 7857. In State ex rel. v. Drainage Dist., 236 S. W. 16, opinion by RAGLAND, J., the court refers to such general drainage and levee laws, as providing for "rural drainage." But, however that may be as to cities in general (which we need not decide), we think that the provisions of Article VIII of said Chapter 28 and said Sections 7856 and 7857 show that the Legislature assumed that cities of 100,000 and 300,000 or more had authority by their charters to build levees and drains within their corporate limits, and were not deprived of that authority by the general statutes relating to drains and levees, and only required authority from the State to build or acquire drains and levees, or to co-operate and contract with levee and

drainage districts outside of the city, in this or another state, to effectually protect the health and property of their citizens from excessive floods or waters, however occasioned. Such provisions of the general statutes negative the idea that the general law intended that any such outside drainage or levee district could be formed, by the petition of landowners, under the general statutes, to embrace lands within any city of 100,000 or 300,000 inhabitants or more, with lands outside of such city. This could be done only by the petition of the city itself, or the county court, under said Article VIII, and then for sanitary drainage purposes only, as therein provided, and not for levees also, which are not authorized by said Article VIII.

II. But we also hold that, even if said general statutes would authorize this proceeding, in the absence of a provision in the Kansas City charter on the subject, the charter provision of Kansas City providing for such levees and drains within the city is a matter of local municipal concern, and, therefore, properly included in such charter and controls the establishment of levee and drainage districts in said city. Learned counsel do not controvert the proposition that if it is essentially a matter of local concern it might be constitutionally inserted in such freeholders' charter. But they strenuously insist, that the making of drains and levees is a matter of general public concern of the state at large, and not of essentially local concern, as shown by the general drainage and levee laws, because the drainage and levee districts provided for by such laws are expressly made public corporations, and, therefore, they are mere arms or branches of the state government, the same as public school districts. [State ex rel. v. Drainage Dist., 236 S. W. (Mo.) 15.]

While, it is true, that said general drainage and levee laws so contemplate and provide, as to the districts

*Scope of Charter Provisions.*

therein provided for, it does not follow that levees and drains exclusively within cities may not be essentially a matter of local municipal concern, and provided for in the freeholders' charter of Kansas City, authorized by Section 16 of Article IX of the State Constitution, which charter must "always be in harmony with and subject to the Constitution and laws of this State."

The creation of sewers and drains within cities, and levees also, which accomplish the same purpose, is one of the elementary functions of a local or municipal government. "The construction . . . of a system of sewers for a municipality is clearly a municipal function." [3 Dillon, Mun. Corp. (5 Ed.) sec. 1148.] "Logically all those are strictly municipal functions which specially and peculiarly promote the comfort, convenience, safety and happiness of citizens of the municipality, rather than the welfare of the general public." [28 Cyc. 269.]

So essential are sewers to the hygiene and sanitation of municipalities, that the rule of strict construction is relaxed in construing their powers to construct sewers. [9 R. C. L. p. 621; McMurry v. Kansas City, 283 Mo. l. c. 493.]

Indeed, it may be said to be a matter of common knowledge that all cities of any considerable population in this State have from the earliest time, either by special charter or general law, been authorized to construct *sewers,* and levees belong to the same class of necessary local municipal improvements. Sewers are of a more local character and concern than streets in a city. [Donohoe v. Kansas City, 136 Mo. l. c. 667.] And, it is well settled that streets are of such local concern that the freeholders' charter of Kansas City may contain its own special provisions for opening and grading streets, although they conflict with the general law relating to cities on that subject. [State ex rel. Kansas City v. Field, 99 Mo. 352; Kansas City v. Marsh Oil Co., 140 Mo. 458.] We have also made the same ruling as to primacy of

the charter over the general state law relating to the establishment and maintenance of parks in said city. [Kansas City ex rel. v. Scarritt, 127 Mo. 642.] We must, therefore, rule that the charter provisions of said city relating to the establishment of levees and drains *within said city* are a matter of essential local municipal concern, properly contained in the freeholders' charter of Kansas City, and prevail over the general law on that subject, if there is any difference or conflict between them.

There is nothing to the contrary in the cases cited by learned counsel for appellant. They cite Ewing v. Hoblitzelle, 85 Mo. 64, pertaining to election commissioners; St. Louis v. Meyer, 185 Mo. 583, pertaining to peddlers; State ex rel. v. Telephone Co., 189 Mo. 83, relating to fixing telephone rates; Peterson v. Railroad, 265 Mo. 462, concerning the crossing of railroads by street railways; State ex inf. v. Koeln, 270 Mo. 187, relating to the election of collector; and Kansas City v. Field, 270 Mo. 500, relating to executions issued on judgments in the circuit court for park assessments. In all these cases just cited, the State law was held to prevail, over the freeholders' charter, *because the subject of the legislation was of a general state-wide application and not municipal or local in any respect.* While the state drainage and levee districts are public corporations, they are *local* public corporations and also, in a sense, municipal corporations, and relate to municipal matters. [State ex rel. v. Drainage Dist., 236 S. W. (Mo.) 15.] The above authorities cited by appellant recognize that general municipal laws as to municipal matters may be superseded, as to said city, by provisions in the freeholders' charter of Kansas City. In the Field case, supra, 270 Mo. 514, the court said, quoting from the Marsh Oil case, supra: "So long as Kansas City, under its special charter, does not invade the province of general legislation, or attempt to change the policy of the State as declared in her laws *for the people at large,* it will not be held to be out of harmony with such laws, *notwithstanding the provisions*

*of the special charter may be different from the general statutes prescribed for the government of other cities in their local affairs."* (Italics ours). The same language, in effect, is used in Peterson v. Railroad and other cases cited by appellants. In McGhee v. Walsh, 249 Mo. l. c. 280-81, it was expressly held that the provisions in the freeholders' charter of Kansas City as to sewers (which would also apply to drains and levees) was authorized to be inserted therein by the Constitution, and had "the same force as if they had been enacted into a statute by the General Assembly of the State."

We must rule this point against the appellants.

III. Learned counsel for appellants also make objections to the constitutionality of said charter provisions, on other grounds. The charter provisions consist

Constitutional Provisions.

of 27 sections, and provide generally for the creation of levee and drainage districts in the city by ordinance. The drains and levees are to be paid for out of the general fund of the city, or by special assessments for benefits upon the private lands in the district.

The objections of appellants are as follows: "(a) that said charter is not due process of law wherein it undertakes to authorize the Board of Public Works to estimate and calculate the cost of construction without notice or hearing;" (b) that the jury must find the cost of the work exactly, as determined by the Board of Public Works; (c) that the court must render judgment for benefits based on such fixed estimate; (d) because such charter allows the jury to assess the amount of benefits to the city at large, the same as in cases to condemn land for a street; (e) because it allows such district to be created summarily by ordinance.

While it is true, such estimate is by the charter made conclusive, as one of the items of the cost of the improvements, yet the property owners are not to be assessed for any greater sum than their land is specially bene-

fited thereby. The jury is required by Section 6 to first "estimate the amount of benefit to the city at large," and then "estimate the value of the benefit of the proposed improvements to each and every lot, piece and parcel of private property, exclusive of buildings and improvements thereon within the district, if any benefit is found to accrue thereto." If the total benefits to the city at large and to the private property exceed the estimated cost of the work, then it is, in substance, provided a pro rata reduction must be made in the assessment for benefits against the private property. The property owners affected are given notice, and there is a trial by jury of six freeholders, for the assessment of benefits and damages, the same as in proceedings to establish parks.

It would seem that such charter provisions are not subject to any of the objections made thereto by learned counsel. No property can be assessed with more benefits than it actually receives, notwithstanding the estimate of the cost made by the Board of Public Works is conclusive, and cannot be inquired into. The work is required to be let by contract to the lowest bidder and such estimate of the cost, in no way increases the assessments, or affects the property owners to their disadvantage. That a city may establish a sewer or other improvement district and fix the boundaries within which private property may be assessed with benefits by ordinance, has frequently been affirmed by this court. [McMurry v. Kansas City, 283 Mo. 479; McGhee v. Walsh, 249 Mo. 283; State ex rel. v. Thomas, 278 Mo. 98; City of Caruthersville v. Ferguson, 226 S. W. (Mo.) 912.] We find nothing unconstitutional pointed out in said charter provisions.

IV. Appellants also contend that the cost of levees and drains, owing to the topography of the land, will be greatly increased, if the city proceeds to levee **Excessive Cost.** and drain the land within its limits, separately from the lands outside thereof. But this is a matter of expediency or judgment, on the part of the

city, in the exercise of its power, which has no bearing on the validity of said charter provisions or the ordinance providing such levee district within the city.

V. The trial court reached a correct conclusion in holding that property within the corporate limits of Kansas City, Missouri, could not be legally included

Judgment. within the boundaries of the proposed district, yet it went too far in dismissing the action, as the petitioners may be able to show that a satisfactory district can be established without including within the boundaries thereof any of the property aforesaid within the corporate limits of Kansas City, Missouri.

The judgment below is accordingly reversed and remanded with directions to dispose of the case in accordance with the views heretofore expressed. *Higbee, C.,* not sitting.

PER CURIAM:—The foregoing opinion of RAILEY, C., in Division Two, is adopted as the opinion of Court in Banc. All of the judges concur, except *James T. Blair, J.,* not sitting, and *Walker, J.,* absent.