THE STATE ex rel. BRUENTING REALTY COMPANY et al. v. WILLIAM O. THOMAS, Judge of Circuit Court, et al.

In Banc, April 26, 1919.

1. **CONDEMNATION: Of Existing Viaduct: Incidental Power.** A provision in the charter of Kansas City, empowering the city by ordinance to establish, construct and maintain, for public use, any viaduct, bridge, or approach thereof or right-of-way therefor, upon

the payment of just compensation to the owners of property taken for such purposes, is broad enough to include the incidental and implied power to condemn and acquire, for a public thoroughfare, land on which is an existing viaduct and the viaduct itself, now owned and operated by private persons as a toll way.

2. ———: ———: **Property Already Dedicated to Public Use.** A viaduct or passageway, owned by a private corporation, which charges tolls for its use, though located within the corporate limits of a city, is not dedicated to a public purpose, and consequently the contention that the city cannot condemn property to public use which is already dedicated to a public purpose, is not applicable.

3. ———: **Property Subject To: Personalty.** Complex property, consisting of realty and personalty, franchises, leaseholds, etc., belonging to the owner of a viaduct, and every species of property the public needs may require and the government cannot lawfully appropriate, are the subject-matter of condemnation for public use.

4. ———: **Previous Agreement As to Value.** An offer of sale to the city by the owners of the property authorized by the ordinance to be condemned, at a named price, is not conclusive upon the court or jury in ascertaining its value, and does not forestall a condemnation proceeding.

5. ———: **Use By Street Railway.** Provision in the condemnatory ordinance for the future use by a street car company of the viaduct to be acquired by the city, is no objection to the city's right to maintain the proceeding. Such use does not change the public ownership or control of the property condemned.

6. ———: **No Benefit to Property Assessed.** The necessity, expediency and propriety of taking private property for public use through the exercise of the power of eminent domain are determinable by the municipal assembly of Kansas City, and whether the designated benefit district is specially benefited by the acquisition of a viaduct and the establishment of a thoroughfare is, by the charter, a question for the jury.

7. ———: **Procedure: Prohibition.** Prohibition lies only to prohibit a court from exercising a jurisdiction it does not possess or from exceeding its jurisdiction, and cannot be used to correct errors of law or to prohibit the court from committing such errors, and therefore the Supreme Court cannot on prohibition prescribe for the circuit court under what section of the city charter it should assess with benefits the particular property to be acquired in a condemnation proceeding. If the circuit court commits error in that respect the remedy is by appeal or writ of error.

Prohibition.

WRIT QUASHED.

*Reinhardt & Schibsby* for plaintiffs.

(1) The city has no express power under the charter to condemn an existing viaduct and railroad and pay therefor by special assessments. Kansas City Charter, art. 1, sec. 1, pp. 95, 96, 97; art. 13, sec. 1, pp. 398 to 443; art. 6, sec. 1, p. 252; art. 6, sec. 2, pp. 254, 255; art. 6, sec. 3, p. 260; art 6, sec. 17, pp. 279, 280; art. 8, sec. 28, pp. 351, 352; Kansas City v. Hyde, 196 Mo. 498. (2) The city does not have implied power to condemn an existing viaduct and railroad and pay therefor by special assessment. DeGeofroy v. Merchants Bridge Terminal Ry. Co., 179 Mo. 719; Kansas City Charter, art. 6, sec. 17, pp. 279-280; Kiley v. Oppenheimer, 55 Mo. 376; Leach v. Cargill, 60 Mo. 316; Westport v. Mastin, 62 Mo. App. 647; West v. Porter, 89 Mo. App. 153; St. Louis v. Koch, 169 Mo. 587; Dillon on Mun. Corp. (5 Ed.) secs. 237, 238, 1024, 1377, 1402; St. Louis v. Laughlin, 49 Mo. 568; St. Louis v. Kaime, 180 Mo. 320. (3) The city cannot condemn property for public use already dedicated for the same purpose. St. Louis v. Moore, 190 S. W. 867. (4) The city and the viaduct company have agreed upon a price for the viaduct contrary to the express provision of the charter, that a jury must ascertain and assess the damages. (5) The city is attempting to use its power of eminent domain to acquire private property to let and lease to private parties. (6) This is not a special benefit to the property in the benefit district, but an indirect method to raise money for the acquisition of the viaduct.

*John G. Park* also for plaintiffs.

(1) The power to impose special assessments is purely statutory and must be strictly construed. Leach

v. Cargill, 60 Mo. 316; St. Louis v. Koch, 169 Mo. 587; Westport v. Mastin, 62 Mo. App. 647. Where the law is of doubtful meaning, the doubt must be resolved in favor of the taxpayer and against the board or sovereignty attempting to levy the tax. St. Louis v. Realty Co., 259 Mo. 126. (2) The only plain, explicit provision for the special assessments for viaducts is Charter, art. 8, sec. 28, p. 351. The word "constructing" in that section is the equivalent of "purchasing" or "providing." State ex rel. Crow v. St. Louis, 169 Mo. 31; Schwabe v. Moore, 187 Mo. App. 79; City of Lincoln v. St. Ry., 67 Neb. 469; Gamble v. Water Co., 123 N. Y. 91, 9 L. R. A. 527; Thompson v. Railroad, 3 Sandf. Ch. (N. Y.) 625; Seymour v. Tacoma, 6 Wash. 138; Ostrander v. Salmon, 20 Ida. 153. (3) The special scheme or plan provided in article 8, section 28, is preclusive. St. Louis v. Kaime, 180 Mo. 317; State ex rel. v. Clifford, 228 Mo. 194; St. Louis v. Transfer Co., 256 Mo. 476; Ackerman v. Green, 201 Mo. 231.

*E. M. Harber,* City Counselor, *M. A. Fyke* and *J. C. Petherbridge,* Assistant City Counselors, for defendants.

(1) The Legislature has expressly conferred upon Kansas City the power of eminent domain. Secs. 9754, 9762, R. S. 1909. The charter expressly provides for the condemnation of property, real, personal or mixed, for public purposes, and to pay for such property by special assessments. Sec. 1, art. 1, Charter 1908; Pars. 2 and 3, sec. 1, art. 3, Charter 1908; Art. 6, Charter 1908. (2) A municipality, like Kansas City, operating under a special charter, has all the necessary implied powers to fully carry out and effectuate its express powers. Water Co. v. City of Aurora, 129 Mo. 575; State ex rel. v. Walbridge, 119 Mo. 383; Chambers v. St. Louis, 29 Mo. 543; Hafner v. St. Louis, 161 Mo. 34; Haeussler v. St. Louis, 205 Mo. 656; 4 McQuillin, Munic. Corp. pp. 3080, 3084; Cunningham v. Ponca, 27 Okla. 858. (3) The property sought to be condemned is not dedicated for public use-

in law or in fact; it is a private enterprise owned, operated and maintained as such by private parties for hire, over which the municipality has no jurisdiction and in which the public has no interest and cannot use and enjoy except on payment of the sum exacted by the private owners thereof. Although the property may be devoted to a public or semi-public use for hire by private parties, as in this case, yet it may be condemned by the city for the same or another public use, if it is in the interest of the public to do so. The private right must yield to the public interest in such matters. 4 McQuillin, Munc. Corp. pp. 3131, 3136; Tacoma v. Nisqually Power Co., 57 Wash. 420; West River Bridge Co. v. Dix, 6 How. (47 U. S.) 507; Re Brooklyn, 143 N. Y. 596; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685. (4) The ordinance on which the proceeding is based is not indefinite and uncertain; nothing could be more specific and definite, as to just what the city is trying to do. Under the ordinance, the city is seeking to acquire by condemnation proceedings, for public use, only such property, real, personal and mixed, franchises, easements, contracts and leasehold interests, which are authorized by its charter and the law. Sec. 1, art. 1, Charter 1908; 4 McQuillin, Munc. Corp. pp. 3125, 3126; Christy's Adm'r. v. St. Louis, 20 Mo. 143; Cooley's Const. Lim. (3 Ed.) sec. 526; Pittsburg C. C. & St. L. Ry. Co. v. Wolcott, 162 Ind. 399; Lewis Em. Dom. (3 Ed.) sec. 412; Stein v. Chesapeake & Ohio Ry. Co., 132 Ky. 330; Pac. P. Telegraph & Cable Co. v. Oregon Ry. Co., 163 Fed. 969; State v. Sheffield & Thompsonville Bridge Co., 81 Conn. 56; Re Brooklyn, 143 N. Y. 596; Red River Bridge Co. v. Clarksville, 33 Tenn. (1 Sneed) 176; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685; Cooley's Const. Lim. (5 Ed.) sec. 341. (5) Use by street cars is not illegal or improper. Haeussler v. St. Louis, 205 Mo. 684. (6) Special benefits are questions of fact for the jury. Par. 4, sec. 3, art. 6, p. 260, Charter 1908. (7) If the city has the power to construct a viaduct, then it has

the power to acquire one already constructed, if suitable for public use by the municipality. Schwabe v. Moore, 187 Mo. App. 74; State ex rel. v. St. Louis, 169 Mo. 31; Akers v. Kolkmeyer, 97 Mo. App. 520; Thompson v. Railroad, 3 Sandford Ch. (N. Y.) 656; Gamble v. Water Co., 123 N. Y. 91; City of Lincoln v. Lincoln Ry. Co., 67 Neb. 480; West River Bridge Co. v. Dix, 6 How. (47 U. S.) 507; Long Island Water Co. v. Brooklyn, 166 U. S. 685; Re Brooklyn, 143 N. Y. 596; Brady v. Atlantic City, 53 N. J. Eq. 440; Dick v. Scarborough, 73 S. C. 150. (8) Improvements on lands condemned are a part of the realty and must be paid for as such and in the same manner as the lands. Kansas City v. Morse, 105 Mo. 519; Mississippi River Bridge Co. v. Ring, 58 Mo. 491; Finn v. Gas & Water Co., 99 Pa. St. 631; Mills on Em. Dom. 223. (9) The necessity, expediency or propriety of acquiring private property for public use through the exercise of the power of eminent domain, by a municipality, is a legislative function for its legislative body to determine and perform and is not a judicial question for the courts to decide, unless the legislative body has acted fraudulently or corruptly. Kansas City v. Bird, 98 Mo. 215; Kansas City v. Mastin, 169 Mo. 80; St. Louis v. Brown, 155 Mo. 545; Aldrich v. Spears, 101 Mo. 400; City of Hannibal v. Railway Co., 49 Mo. 480; Cape Girardeau v. Houck, 129 Mo. 607; Field v. Barber Asphalt Co., 194 U. S. 618; De Witt v. Duncan, 46 Cal. 342; Lent v. Tillson, 72 Mo. 404; Wolzen v. San Francisco, 101 Cal. 15; Ill. Cr. Co. v. Chicago, 141 Ill. 586; Ellison v. Allen, 62 N. Y. S. 274; Durham v. Rigsbee, 141 N. C. 128; Chicago & N. W. Ry. Co. v. Cicero, 154 Ill. 656; Chicago & A. R. Co. v. Pontiac, 169 Ill. 155; Chicago & N. W. Ry. Co. v. Morrison, 195 Ill. 271; Dunlap v. Mt. Sterling, 14 Ill. 251.

BOND, C. J.—On December 12, 1918, the city of Kansas City passed an ordinance to condemn certain lands, rights-of-way, and a steel, iron and concrete via-

duct constructed thereon, extending from Minnesota Avenue in Kansas City, Kansas, to and connecting Bluff Street at the intersection of Sixth Street, in Kansas City, Missouri, known as the Inter-City Viaduct. The total length of the main structure is one mile and a half, and the length of the approach is eighteen hundred and fifty-eight feet.

Provision has been made in Kansas City, Kansas, to acquire that portion of the land, rights-of-way and viaduct thereon lying in the State of Kansas for use as a public street and trafficway.

In the present proceeding Kansas City, Missouri, is seeking to acquire that portion of the viaduct and property on which it is located, which lies in the State of Missouri, for use as a public street and trafficway, so that by the two proceedings in the two states a free public highway shall exist between the two cities.

The property and structure sought to be appropriated cost about three millions of dollars. It could not be duplicated to-day for less than about four millions. The two cities and the property owners have carried on negotiations for converting it into a public trafficway, which culminated in October, 1918, in a proposal by the owners of the property to sell it to the two cities for $1,775,000, fifty-six per cent of which was to be paid by Kansas City, Missouri, and forty-four per cent to be paid by Kansas City, Kansas. Thereafter to achieve public intercommunication between the two cities by the appropriation of this viaduct, an ordinance authorizing its condemnation was enacted by Kansas City, Missouri, and filed as the basis of that proceeding in Division Number Four of the Circuit Court of Jackson County, Missouri. The machinery of that court being thus set in motion (Kansas City v. Smith, 238 Mo. l. c. 330), certain persons owning property in the benefit district fixed by the ordinance moved to dismiss the proceeding, upon the overruling of which the present application was filed by them to prohibit the said court from further proceedings for alleged lack of jurisdiction.

Owing to the importance of the matters involved, the circuit judge before whom the case was pending in Kansas City, Missouri, and the City of Kansas City and its counsel filed an answer entering their appearance, waiving the issuance of a preliminary writ, consenting that the petition might be treated as an alternative writ, and praying a special hearing of the matter on the merits and alleging, in said answer, among other things, the proper institution of proceedings to condemn, the issuance of an order of publication, notifying all persons concerned that the cause was returnable January 25, 1919, for the purpose of impaneling a jury as provided in the charter of said city.

The answer further alleges that the property sought to be condemned is owned by a viaduct company, under a franchise running for thirty years; that said company filed in the circuit court its answer and waiver of right to remove the viaduct and improvements located on the lands sought to be condemned for a public street and trafficway by the ordinance filed in that court, and consenting that the property might be condemned by Kansas City, Missouri, as prescribed in its ordinance upon payment of just compensation. The answer further avers:

"5. That the power of ominent domain possessed by Kansas City and the various provisions of its charter relating to such matters, and the laws of Missouri give to said city full and complete power to condemn the property in question as and for a public street and highway; that Division No. Four of the Circuit Court of Jackson County, Missouri, at Kansas City, has jurisdiction of the parties and the subject-matter in said proceedings and has full power, authority and jurisdiction, under the charter of Kansas City, and the Laws of this State, to proceed to try and determine the matters and things in said cause, and that said court has full power, authority and jurisdiction to impanel a jury of six disinterested freeholders of Kansas City, as it did on the 25th day of January, 1919, in said proceeding, for the

purpose of ascertaining and determining the damages and benefits, and has full power and jurisdiction to hear evidence in said cause and proceed to award damages and assess benefits as proposed and contemplated therein against the property defined in said proceeding; that the city not only possesses the power to condemn and appropriate for public use a private viaduct already constructed, but that it has power, in said proceeding, to levy and assess the cost thereof upon the various tracts and parcels of land in the benefit district described and set forth in said Ordinance No. 35,965. That said structure as it now stands is not a public highway, but a private highway, owned and operated by private parties, for which they charge a toll to whoever uses it; that said structure is suitable and usable as a public highway, connecting as it does with a public street in Kansas City, Missouri, and with a public street in Kansas City, Kansas, and if acquired by the two cities, as contemplated, it will be the main public thoroughfare and highway between said cities, which can and will be used by the public as a public street and thoroughfare by pedestrians and all kinds of vehicles, between the two cities.

"The rentals from the use of said viaduct by the street car company will not go into the general funds of the city, but that the same will go into a special trust fund for the purpose of repairing, keeping in repair and the reconstructing of the viaduct whenever needed, as shown by copy of Ordinance No. 35,267 of Kansas City, Missouri, authorizing such contract; a copy of said ordinance is hereto attached and marked Exhibit No. 2 and made a part hereof; a copy of said contract is hereto attached and marked Exhibit No. 3 and made a part hereof.

"Defendants deny that Kansas City, Missouri, has entered into a contract with the owners of the viaduct for the purchase thereof, at a stipulated figure, which in any way could possibly bind the court or jury in determining the true value of said property and the just

compensation to be paid therefor, and that all that Exhibit D, attached to plaintiff's application, amounts to is a mere proposal only on behalf of the owners of the property, to take so much for it, if paid within a certain time and upon certain terms. The amount so fixed in said written option or proposal amounts merely to an offer to sell the property for that amount, and does not necessarily, and cannot under the Kansas City Charter, and the law, bind the court or jury in fixing the amount of compensation to be paid for said property, in said proceedings sought to be condemned.

"Defendants further answering, deny the alleged legal effect of each, all and every statement, allegation and averment in said application made or contained.

"Wherefore, defendants having fully answered, pray that a writ of prohibition herein be denied and plaintiff's application and petition be dismissed."

On the filing of this answer, the applicants for prohibition in this court moved for a judgment thereon and that the temporary writ of prohibition be made absolute.

I. It is insisted by relators that there is a distinction between the acquisition of property by Kansas City for condemnation proceedings for the *construction* of a viaduct, and the acquisition of property upon which a viaduct has already been constructed for the use of the same as a public street or trafficway. According to the theory of relators, the city has no power to levy assessments for the latter purpose, although it would have full power to establish a benefit district and tax the property comprised therein for the purpose of acquiring by condemnation land whereon to erect a viaduct for use as a public thoroughfare.

Condemnation of Viaduct.

Powers of a municipal corporation are derived from its charter and consist (1) of express grants, (2) powers necessarily or farily implied in or incident to those expressly granted, and (3) powers essential to accomplish objects for which the municipal corpora-

tion was created and established.    [Dillion, Municipal
Corporations (5 Ed.), sec. 237.]   These specifications of
the powers of public corporations have been uniformly
approved in this State.    Hence any exercise of the
faculties of a municipal corporation falling within
either of these definitions and classifications, must be
held valid.    Under the Constitution (Sec. 6, art. 12)
and the statutes (R. S. 1909, secs. 9764, 9762, 9688)
and the charter of Kansas City (K. C. Char. 1908, sec.
1, art. 1, pars. 2, 3.; sec. 1, art. 3, and art. 4), Kansas
City, Missouri, is invested with the power of eminent
domain for the condemnation of property for public
purposes and invested with power to levy special as-
sessments for that purpose.   All these sources of author-
ity are within the judicial cognizance of this court.
Section 1 of Article 6 of its charter empowers Kansas
City to provide by ordinance for the establishment,
construction and maintenance for public use, any *via-
duct*, bridge or approach thereof or right-of-way there-
for, upon the payment of just compensation to the
owners of the property taken for these purposes,
to be ascertained by a jury of six disinterested free-
holders.    It is, therefore, beyond question (and is
conceded by relators) that Kansas City would have
power by condemnation, to acquire the land on which
to build a viaduct for public purposes.   We see no
valid reason why it is not an obvious corrollary of this
principle that it should have the power to acquire by
the same method, property whereon a viaduct is situa-
ted which is suitable in every way as a public thorough-
fare.   If it might acquire the land and levy assessments
to pay for it and also for the erection of a super-
structure, why could it not pursue the tantamount al-
ternative of condemning both land and a proper via-
duct thereon? How could the owners of property within
the benefit district be hurt, provided the existing via-
duct was acquired at a sum not greater than it would
cost to build a new one?   The charter expressly au-
thorizes condemnation to establish and maintain a

"viaduct." The method proposed in the present instance accomplishes the same public object. Why is it not, therefore, strictly within the scope of the powers of a municipal corporation, which enables it to do anything which is implied in or incidental to the powers expressly granted or essential to the purpose of its organization? Things that are substantially alike cannot be essentially different. No injury could be inflicted by the present proceeding, which would not be suffered if the land alone had been condemned. The verdict of the jury as to the *actual value* of both the land and the viaduct will determine the amount of benefits assessable. It cannot be assumed that such verdict as to the value of the viaduct will exceed the sum for which another could be built. Hence that verdict will furnish a complete protection to all property owners in the benefit district.

Our conclusion is that the present proceeding in the circuit court will work no injury to the owners of property in the benefit district, and that it is within the implied and incidental powers granted in the charter of Kansas City.

II. Having reached the conclusion that the city (Kansas City, Missouri) is vested with the implied power under its charter to institute and conduct the proceedings for condemnation of the property **Public Use.** described in its ordinance, it is only necessary to rule upon the other contentions made by relators in support of the present application. Among these is the suggestion that the city cannot condemn property for public use, which is already dedicated to a public purpose. It is enough to say in answer to this, that the record conclusively shows that the viaduct in question is not dedicated to a public purpose, but is a passageway owned by a private corporation which charges a toll for its use.

It is also suggested that the ordinance is indefinite and uncertain. The object of the condemnatory

ordinance is the acquisition by the city of complex property consisting of real and personal prop-**Personal Property.** erty, franchises, leasehold interests, etc., belonging to the owner of the viaduct. That these are the subject-matter of condemnation is clear under the following statement of the law:

"Every species of property which the public needs may require and which government cannot lawfully appropriate, under any other right, is subject to be seized and appropriated under the right of eminent domain. Lands for public ways, timber, stone and gravel with which to make or improve the public ways; buildings standing in the way of contemplated improvements, or which for any other reason it becomes necessary to take, remove or destroy for the public good; streams of water; corporate franchises; and generally, it may be said, legal and equitable rights of every description, are liable to be thus appropiated." [Cooley, Const. Limit. (3 Ed.) sec. 526; Christy's Admr. v. St. Louis, 20 Mo. 143; Lewis Eminent Domain (3 Ed.), sec. 412; Cooley, Const. Limit. (5 Ed.) p. 341.]

A careful consideration of the terms of the ordinance satisfies us that they are reasonably certain in intent and import and susceptible of practical enforcement.

It is further suggested that the city and the viaduct company have agreed as to the value of the property to be condemned and therefore nothing is left **Agreed Price.** for the jury to ascertain or to assess. The record shows that an offer of sale of the property at a fixed price, apportionable between the two cities of the respective states, has been made This is not conclusive upon the court or jury in ascertaining the value of the property. Neither is the provision of the ordinance for the future use of the public trafficway by a street car company open to objection. It has been expressly decided that such a use does not change the public ownership and control of the

278 Mo.—7

property condemned.    [Haeussler v. St. Louis, 205 Mo. l. c. 684.]

As to the claim that the designated benefit district is not specially benefitted by the improvement purposed, the answer is that that question is for the **Benefit.** jury under the charter of Kansas City. The necessity, expediency and propriety of taking private property for public use through the exercise of the power of eminent domain, in cases like the present; is determinable by the local legislature of the particular municipality desiring to make the improvement, in the absence of fraud or corruption. See cases cited in defendant's brief.

III.    The learned counsel for the property owners in the benefit district (who are not parties to the record and who appeared by permission) concedes the right of the city to acquire the existing viaduct by condemnation proceedings under its charter and "to impose special assessments to pay for it," the only contention made on their behalf being that the trial court should order an assessment of the property in pursuance of the provisions of Section 28 of Article VIII of the Charter of Kansas City. The present application being one for prohibition lies only for want or excess of jurisdiction on the part of the trial court. Any errors of law which it might make or which might occur in its rulings in the course of the proceedings sought to be prohibited, are not correctible by a writ of prohibition, but could only be reviewed on appeal or writ of error. It is not the province of this court, in an application like the present, to indicate to the trial court in advance what steps it should take, in the exercise of the jurisdiction rightfully lodged in it, to conduct a condemnation proceeding on the part of the city to enforce the ordinance originating it. We have held that it has jurisdiction so to do, under the provisions of the charter of Kansas City. In the exercise of that jurisdiction the trial court is free to exercise its own judg-

ment in the first. instance as to the interpretation, construction and application of the provisions of the charter of Kansas City governing the assessments of benefits. The points made by the learned counsel as to the preclusive applicability of the particular section (Sec. 28, Art. VIII, Char. K. C.) is one, therefore, which must be addressed primarily to the learned trial judge. It is not to be assumed that he will fall into error in disposing of that question; but should he do so, we could not stay his hand by our writ of prohibition without confusing a want 'or excess of jurisdiction with the erroneous exercise of rightful jurisdiction. The fact that we have decided there was no lack of jurisdiction nor excessive exercise thereof by the institution of the suit of Kansas City to acquire the existing viaduct (which conclusion is conceded to be correct by the learned counsel who has intervened) makes it our duty to relegate the cause to the trial court for further proceedings not inconsistent with the views herein expressed.

It necessarily results that the preliminary writ of prohibition granted in this case must be quashed. It is so ordered. All concur except *Woodson, J.*, not sitting.