THE STATE ex rel. S. A. PHILLIPS v. WILLIAM E. BARTON, J. FRANK HALBROOK, WILLIAM R. WELCH and JAMES H. McDONALD.

In Banc, July 28, 1923.

1. **PROHIBITION: Parties Defendant.** The statute (Sec. 2057, R. S. 1919) declaring that "the remedy afforded by the writ of prohibition shall be granted to prevent the usurpation of judicial power" implies that the writ may be directed only against those clothed with the exercise of judicial power, and that no others should be made respondents.

2. ———: **When Available: Limited to Judicial Power.** The writ of prohibition is an extraordinary writ, issuable, at discretion only, in extraordinary cases, to (prevent the exercise of unwarranted judicial power, and if the act sought to be prohibited is not judicial in its nature the writ is not available.

3. ———: **Judicial Power: Definition.** By the exercise of judicial power vested by the Constitution in certain courts named therein is meant such power and authority as is necessary to the

State ex rel. Phillips v. 'Barton.

hearing and determination of a matter at law or in equity, and not such procedural acts or orders as may be authorized by statute in the conduct of a case.

4. ———: Procedural Act: Election Contest: Order of Clerk to Count Ballots. After a general election in November a certificate of election was issued to the candidate for County Collector who on the face of the returns received a majority of the votes cast. His opponent in due time instituted in the circuit court a suit to contest the election, and applied to the circuit clerk for a writ commanding the county clerk to open, count, compare with the list of voters. and examine the ballots and to certify the result to the circuit court. The county clerk proceeded to do so, but before completing the work his term of office expired, and fifteen days later he filed his report, and thereupon the contestant applied to the circuit clerk for another writ directed to the county clerk who had taken charge of the office, and that writ was issued, but before the clerk had complied therewith the contestee applied here for a writ to prohibit the county clerk from complying with the second writ, on the ground that the authority of the county clerk to count and compare the ballots had been exhausted when the first order had been complied with. This writ was directed against the circuit judge who, at the first term held after the county clerk who had gone out of office had made his report, quashed said report. *Held*, that the act of the circuit clerk in issuing such writs and the act of the county clerk in examining the ballots and certifying the result while still in office were purely ministerial, authorized by statute for the purpose of securing and preserving testimony for use in the trial of the contest suit, and such acts possessed no features authorizing them to be classified as the exercise of judicial power, and cannot be prevented by the writ of prohibition. *Held*, also, that the report made by the first county clerk after he had ceased to be such officer, made in an attempted compliance with the first writ, not being officially certified by him, was not the report contemplated by the statute, and the circuit court was empowered to make an order requiring the then county clerk to proceed to obtain the testimony and make official certification of the result of his examination of the ballots. *Held*, also, that the order of the circuit court quashing the first writ was unnecessary, but was not such usurpation of judicial power as authorizes prohibition.

*Held*, by WOODSON, J., dissenting, that there cannot be two recounts of the ballots, and the ability of the county clerk to officially certify his report does not justify writ for another count.

## Prohibition.

PRELIMINARY WRIT DISCHARGED.

*William P. Elmer* for plaintiff.

(1) When the county clerk complied with the order of the circuit clerk and made a recount of the ballots and certified in his return to the circuit court the result of such recount, it was not for the contestant to determine whether or not such recount had been made in accordance with law, and to reject the return of the county clerk as incomplete and secure a second order from the circuit clerk for a second recount of the ballots. The recount of the county clerk was prima-facie evidence of the facts therein recited under Section 4916, and a return of the second recount under said section would have the same force and effect. (2) The position of the contestant herein is shown by the demand made on the county clerk at the time of the recount. In substance the demand was that in making the recount he permit a complete inspection of the ballot, both as to the number and the face of the ballot and a comparison of the ballot with the poll books so as to ascertain who it was that voted the ballot and for which candidate it was voted, and also that these facts be embodied in his return to the circuit court; in addition to this the contestant desired to make a private record for his own use, showing the same facts. The circuit court agreed with the defendant in his contention and when the return of the county clerk was quashed the court made a record of the reason why such return was quashed. (3) The court has no authority to quash the return because the county clerk refused to permit a private record to be made by the defendants. The law does not contemplate the making of a private record of the names of the voters, number of the ballots and for whom voted. (4) Section 4914 requires the clerk to certify in his return all of the facts either party may desire

which may appear from the ballots. If facts appearing from the ballots are all that the parties may require, then the demand on the county clerk was wrong, and the circuit court was wrong in its reasons for quashing the return. (5) The circuit clerk had no authority to make the second order for recount of ballots until the circuit court had passed upon the return of the county clerk.

*McGee & Bennett, John M. Stephens* and *L. B. Woodside* for defendants.

(1) The clerk of the county court under the provisions of Section 4911 is a mere ministerial officer, and is required to do the acts commanded to be done by the clerk of the circuit court in vacation. Nash v. Craig, 134 Mo. 347. (a) When the county clerk refuses to perform the acts commanded by the clerk of the circuit court and his term of office expires before he could be compelled to do so, the writ becomes an unexecuted writ and defunct in his hands and a new writ may be issued without any action of the court as to the former writ. (b) If the duties provided for under Section 4911 by the clerk of the court in vacation are ministerial, his act cannot be stopped by prohibition. State ex rel. v. Goodier, 195 Mo. 562; State ex rel. v. Elkin, 130 Mo. 90. (c) If the act of the circuit clerk is a judical act then he has the full power in vacation that is vested in the court in term time, to determine whether the return of the county clerk is in compliance with his order and if not to make a new order without any action of the court. (d) By Section 4911 the power to issue the writ is vested in the clerk in vacation, and the court itself is not given any authority to issue it, and if it is a judicial act, the Legislature has vested full power and authority in the clerk of the circuit court to act in vacation, which carries with it the power and authority to determine whether the writ has been obeyed. (e) A contested election is to be tried in summary manner and is triable at the first term of the court, and the object in allowing the clerk

of the circuit court to issue this writ in vacation is to enable the party to get ready for trial at the next term, and the Legislature certainly intended to give full power and authority to the clerk of circuit court to do everything necessary to obtain the information sought. (f) The return of the clerk of the county court has now been quashed by the circuit court upon the ground that the county clerk refused to obey the order of the clerk of the circuit court. This we think was unnecessary and that the clerk had authority. to quash the return in vacation. (g) If it appears in the Supreme Court that the return of the county clerk should have been quashed, it will be accorded in the Supreme Court the same effect as if it had been quashed. Sligo Furnace Co. v. Combs, 292 Mo. 534. (2) Section 4914 requires the county clerk to make his return to the writ under seal. He waited for two weeks after his office expired and when he had no authority to use the seal, made a return without the seal; this pretended return without the seal was void. (a) Section 4914 required him to report every fact shown by the ballots which either party desired and which he absolutely refused to do. (b) The county clerk was commanded to open, count and examine the ballots and compare them with the voting lists and certify the result of such count, comparison and examination, all of which he refused to do. (c) In his pretended return made after he went out of office he says he made the recount of the ballots, but he does not state that he made any examination or comparison, and his return shows a complete non-compliance with the order, and that instead of complying he ruled that the circuit clerk had no authority to make the order, basing his ruling on Section 5403. (d) The object of Section 4911, was to enable parties in election contests to prepare for a speedy trial. It does not give the judge of the circuit court in vacation authority to make the order for the examination, but it lodges this authority, in vacation, with the clerk and gives him all the power that is possessed by the

court in term time, and if the order made by him is ignored by the county clerk until he goes out of office, there is no other alternative but to call for a new order. (3) Where there is jurisdiction to do an act, prohibition will not lie to determine the manner in which it shall be done. State ex rel. v. Klein, 116 Mo. 259. (a) Prohibition is not a writ of right: the issuance of the writ is dependent upon the facts. Interfering as the writ seeks to do with the act of a subordinate tribunal the writ should not be granted except where usurpation of jurisdiction or an act in excess of the same is clearly evident. State ex rel. v. Johnson, 239 S. W. 845. (b) Section 5403 which the county clerk sought to follow instead of the order of the circuit clerk, was held by this court to be invalid insofar as relates to election contests. In re Oppenstein, 289 Mo. 421.

WALKER, J.—This is an original proceeding to prohibit the Judge of the Circuit Court of Dent County from issuing an order in a contested election suit pending in that county to determine the rights of the respective parties to the office of County Collector of Dent County.

At the general election in November, 1922, the opposing candidates for the office of Collector were S. A. Phillips and J. Frank Halbrook. The former, as was shown on the face of the returns, received a majority of the votes cast and a certificate of election was issued to him. The latter within the time limited by the statute, Section 4896, Revised Statutes 1919, and in conformity with its terms, instituted a suit in the circuit court to contest the former's right to the office. Upon the filing of this suit the contestor made formal application in vacation to the Clerk of the Circuit Court, under Section 4911, Revised Statutes 1919, for the issuance by him of a writ directed to the Clerk of the County Court, commanding him to open, count and compare the lists of voters and examine the ballots in his office of the election in con-

test and to certify the result of such count, comparison and examination, so far as the same relates to the office in this contest, to the court from which the writ was issued. The county clerk proceeded to make an examination under the provisions of Section 5403, Revised Statutes 1919, and not under Sections 4911 to 4914, Revised Statutes 1919. The report of this examination was not filed by the county clerk in the circuit court until January 15, 1923, which was after the expiration of his term of office as county clerk. The circuit court was not in session at the time of the filing of this contest of election nor at any time thereafter until December 30, 1922, when it was in session for that day, at which time no steps were taken by the county clerk to make a report of the result of his examination.

Compliance with the writ not having been made by the county clerk during his official term the contestor, on the 10th day of February, 1923, made an application to Wm. H. Welch, Clerk of the Circuit Court, for an order upon James H. McDonald, who, on January 1, 1923, had succeeded J. E. Gaines, as Clerk of the County Court, to open, count and compare with the list of the voters and to examine the ballots in his office cast at the election in contest in the various precincts in the county and to certify the result of such count, comparison and examination, so far as the same relates to the office of Collector of the Revenue of said county. It was stated in said application that an order had theretofore been made upon the former county clerk, but that he had refused to comply with the same. In conformity with the application of February 10th, Wm. H. Welch, Clerk of the Circuit Court, made an order upon James H. McDonald, the then County Clerk, to open, count and compare with the list of voters and examine the ballots which were cast at said election in contest in the several voting precincts in Dent County at the election held on the 7th day of November, 1922, and to make return to the writ under his hand and seal of all the facts which either of said parties may desire

which may appear from the ballots, and that he certify the result to the circuit court, as required by Sections 4913, 4914, Revised Statutes 1919.

Before a compliance by the county clerk with the order of February 10, 1923, had been made, this application for a writ of prohibition was filed and a temporary order was made staying the proceedings until the further order of this court.

The ground upon which it is sought to stay judicial action stated in the contestee's own language is as follows:

"That the jurisdiction and authority of the county clerk to recount the ballots had been exhausted when the county clerk complied with the first order made by the circuit clerk, and so long as the report of the county clerk in regard to the recount of the ballots was pending in the circuit court and had not been quashed or set aside by the circuit court, the contestor had no right to demand the second count of the ballots; that the circuit clerk was without authority to make an order for the second count of the ballots, and that the circuit court or circuit judge in vacation had no authority to make any such order, and the county clerk was without authority to comply with the same."

It is this alleged excessive exercise of power against which restrictive relief is prayed. Commingled with this prayer are averments of unauthorized conduct on the part of certain administrative and ministerial county officers not within the purview of this proceeding other than as they concern the judicial action complained of.

The return of the respondent, the Judge of the Circuit Court, to the writ issued herein is in effect as follows:

"William E. Barton, Judge of the Circuit Court of Dent County, for his return to the preliminary writ of prohibition in this case, says that at the time the petition was filed herein he had never held a term of court in Dent County, had never made any order, in the election

contest in question, and the matter had never been presented to him in any way; but since the filing of said petition at the April Term of the Circuit Court of Dent County, a motion was filed in his court by the contestor to quash the return made by J. E. Gaines, county clerk of said county, which was filed in said cause January 15, 1923, and that he sustained said motion and quashed said return for the reason that the order of A. M. Cage, circuit clerk, had not been complied with by the county clerk. That in quashing said return the following entry was made upon the records, viz: 'The return of the county clerk is quashed for the reason that the order of A. M. Cage, the circuit clerk, was not complied with by the county clerk. That order directed the county clerk to open the ballot boxes, recount the ballots and compare the ballots with the voting lists of the voters; this means that the county clerk should have made a return showing the number of the ballots and the name of the voter as shown by the voting list and the number of the corresponding ballot by number and for which of the parties, contestor or contestee, the same was voted, and should have permitted the contestor to compare the ballots with the list of voters to ascertain the number of the ballot and who voted it and for whom it was voted, as shown by the ballot; and make a record thereof for their own use. All these facts should have been ascertained by the clerk and set out in the return of the county clerk, and the county clerk failed to set them out or allow such examination in compliance with the order of the circuit clerk as requested by the contestor; therefore the return of the county clerk is quashed.' "

To this return the relator filed a motion for a judgment on the pleadings. A better understanding of the issues may be derived from a more succinct statement of the facts: The notice of contest was filed November 13, 1922. On the same day the contestor made application to the clerk of the circuit court, it being in vacation, for an order on the county clerk to examine the ballots under

Section 4911, Revised Statutes 1919, of the election contest statute. This order was made at once by the circuit clerk, returnable November 27, 1922. This was the first day of the regular November term of the circuit court, at which the contest case was not triable. On December 6th, the court adjourned until December 30, 1922, on which day a session was held, as the records disclose, for the disposal of motions for new trials and the closing up of the business of the term. The term of the circuit judge then in office expired, as did that of the county clerk, on the 1st day of January, 1923, at which time the term of the relator began.

I. The initial sentence of our statute on prohibition defines with clearness the persons against whom the writ may be invoked. Its language is as follows: "The remedy afforded by the writ of prohibition shall be granted to prevent usurpation of judicial power and in all cases where the same is now applicable according to the principles of law." [Sec. 2057, R. S. 1919.]

Proper Respondents.

This statute did nothing more than give definite expression to the purpose of the writ as it existed at the common law. The latter part of the statute therefore which provides that the writ may be invoked "in all cases where the same is now applicable according to the principles of law" is simply a redundancy in that the purview of the writ theretofore defined is the same as at the common law. Being the same and authorized to be invoked only to prevent judicial usurpation it follows that it may with legal propriety be directed only against those clothed with the exercise of judicial power and hence none others should be made respondents. We have repeatedly so sought to thus limit the parties against whom the writ should be directed. [State ex rel. Stroh v. Klene, 276 Mo. 206; State ex rel. v. Bright, 224 Mo. 527; State ex rel. v. Rassieur, 184 S. W. (Mo.) 116.] That one may not be presumed to know other than the common law as was jestingly declared by an eminent English judge, should not be held to include those seeking relief under a

statute which not only defines the purpose of its enact-
ment but as a consequence limits the parties against whom
it may be invoked.  We have dwelt at this length upon
the matter of the proper parties to a proceeding of this
nature because of the disregard manifested in this case
of the plain terms of the statute and of our rulings there-
on.  Not only is it sought to stay the judicial arm, but the
instrumentalities as well through which its power is
exercised.  If the judicial power, with which we are alone
concerned, be stayed by our writ, the means through
which such power may be exercised will be rendered
likewise powerless.  This action, therefore, should have
been brought only against the circuit judge.

II.  Keeping in mind that this is an extraordinary
writ issuable at our discretion only in extraordinary cases
(State ex rel. Realty Co. v. Thomas, 278 Mo. 85; State
ex rel. Elam v. Henson, 217 S. W. (Mo.) 17; State ex
rel. Larew v. Sale, 188 Mo. 493) to prevent the exercise
of unwarranted judicial power, an inquiry as to the nature
of the act sought to be prevented. becomes material; if
it be other than judicial it is foreign to the purview of this
proceeding.  By the exercise of judicial power vested by
the Constitution (Art. 6, sec. 1) in the courts named
therein, is meant such power and authority as is neces-
sary to the hearing and determination of a matter at law
or in equity; and not such procedural acts or orders as
may be authorized by the statute in the conduct of the
case.  [Johnson v. Railroad, 259 Mo. 534; State ex rel.
Schl. Dist. v. Andrae, 216 Mo. 617; State ex rel. West v.
Clark Co., 41 Mo. l. c. 49.]

These cases and others which might be cited, are,
it is true, more illustrative than definitive.  The illustra-
tions they present, however, when applied to the facts
in a given case, aid by analogy in determining the char-
acter of the act sought to be prohibited.  In some respects
the contest election statute is *sui generis* and as such sub-
ject to the statute of its creation.  Acts of the character

here under review, however, are subject to the same general rules of interpretation as are like acts under the general law.  If therefore the act complained of is judicial or ministerial in an ordinary civil suit it is subject to a like classification in a contest election suit.  But lest the theme become enmeshed in words, in what does the act which here seeks prohibition consist?  Briefly, of an order by one ministerial officer, the circuit clerk, upon another, the county clerk, a compliance with which is intended to secure and preserve testimony relevant to the hearing and determination of the case.  Moving from and to be executed by purely ministerial officers it demands neither that discretion or discrimination required to be exercised by a court, but simply an intelligent compliance with the statute, such as will serve the end of its enactment and no more.  Under these facts the act complained of neither in its issuance by the one officer nor a compliance therewith by another possesses any of the features which would authorize it to be classified as an exercise of judicial power.  Furthermore, if it had been issued by the court in term time this would not have changed its character which is fixed, not from the source from which it emanates, but from the purpose of its issuance and the manner of its execution.  These are the touch-stones for the determination of the nature of the power sought to be prevented.  If precedent were needed to confirm this conclusion it may be found in State ex rel. Schl. Dist. v. Andrae, 216 Mo. 617, where in a well considered case by GRAVES, J., in discussing what constitutes judicial power, as we have defined it in the beginning of this paragraph, he says:  "It does not include every authority judicial in its nature which requires the exercise of judgment or discretion."  [Citing State v. Hathaway, 115 Mo. 36.]

This classification of the order under review is in accord with an early ruling of this court in Nash v. Craig, 134 Mo. 347, construing the statute (then Sec. 4721, R. S. 1889; now Sec. 4911, R. S. 1919) under which the order

complained of there was issued. The pertinent part of the opinion in that case is as follows:

"The count, examination, and comparison is really made by the parties to the contest and their attorneys; the clerk merely keeps a minute of the objections of the parties and reports them to the court. His authority in determining the validity of the ballots, and the action of the election officers, is no greater than that given him and his assistants in examining and casting up the returns of the election officers of the various election precincts. It has been held that the duty performed by those canvassing officers is simply ministerial. [State ex rel. v. Williams, 95 Mo. 162, and authorities cited.]

"Such ministerial duties, if performed under the supervision of the clerk, may be done by any assistant the clerk may select. 'It is impossible in the very nature of things,' says Judge SHERWOOD, 'that an officer should be able to give his personal supervision to all the various business details of his office. If not allowed to employ assistants and subordinates and to largely rely upon both their faithfulness and capacity, the public interests would often suffer detriment. It is sufficient if the officer who makes the certificate has official knowledge of the facts to which he certifies; and such knowledge may well be derived from the above indicated sources.' [Kefferstein v. Knox, 56 Mo. 186.]"

It may be contended that although the proceeding, so far as the action of the clerks is concerned, is ministerial, that something savoring of judicial power may be discerned in the subsequent action of the judge of the circuit court in quashing the alleged report of the clerk of the county court and ordering his successor to proceed to secure the testimony desired. It will be enough to say that an array of the facts will suffice to dispose of this contention without wasting words in discussing the classification of the act. It is admitted that the clerk of the county court whose term expired January 1, 1923, made no report of his proceedings under the order of the

circuit clerk until after his official term had expired. This was a statutory order, directed to a statutory officer whose sole power in this behalf was derived from his official position. When this ended, his power ended. Whatever he may have done thereafter, whether in attempted compliance with the statute under which the order directed to him had been made, or as he admits, under another (Sec. 5403, R. S. 1919) the purpose of which is confined to requiring custodians of ballots and ballot boxes to produce same in evidence, was of no effect, either as a compliance with the order, or as furnishing testimony admissible at the trial. The validity of the report is, therefore, not one dependent alone upon the examination having been made by the county clerk, but to give it even prima-facie character as evidence of the facts therein stated it must be officially certified to by such clerk. [Sec. 4916, R. S. 1919.] Lacking these essentials it is, in contemplation of law, no report.

The circuit court had jurisdiction of the subject-matter and of the persons. Thus panoplied it was empowered to make such orders in the progress of the case as the law prescribed as necessary to the hearing and determination of the matter at issue. The order for the obtaining and preservation of the testimony having been regularly made by the clerk of the circuit court in vacation, but not having been complied with—the manner of noncompliance being immaterial—the court was authorized under Section 4911 to make an order requiring the then county clerk to proceed as required by Sections 4911 to 4916, Revised Statutes 1919, to obtain the testimony therein referred to and to make an official certification of the result of his examination to the circuit court.

This court has more than once had the question of the extent of this examination under consideration. In State ex rel. Young v. Oliver, 163 Mo. 679; State ex rel. Funkhouser v. Spencer, 164 Mo. 23, and Montgomery v. Dormer, 181 Mo. 5, what is now Section 4911 was given

a cramped and a narrow construction in holding that it granted no authority for a comparison of the ballots with the voting lists. These rulings the court held in Gantt v. Brown, 238 Mo. 560, were not in harmony with the purpose of the statute, and that the enforcement of the rule as thus announced would render contests of elections nugatory. The limitation upon the right of examination in the cases cited is held to prescribe a procedure, the tendency of which is to foster rather than expose fraud and thus defeat the purpose for which the law was enacted. These cases, therefore, are as they should have been, under the wholesome interpretation given to the statute in Gantt v. Brown, overruled. The rule announced in the latter case is to the effect that where, as here, fraud is charged in good faith in an election contest, that the ballots and poll books should be opened for the purpose of showing whether fraud, be it actual or legal, has been committed; that the mode and manner of proof should be as broad as the charges and any available evidence tending to establish or disprove the charge is competent. Not only, says the court, are the ballots and poll books admissible in evidence, but a witness may testify as to how he voted, as tending to show fraud or no fraud; that when a ballot is examined having a certain number the party challenging it as fraud is entitled to an examination of the ballot to determine from the corresponding number thereon who cast it. The statute (now Sec. 4880, R. S. 1919) so provides, and there is nothing in the Constitution to inhibit the admission of this character of testimony. On the contrary it is expressly provided (Sec. 3, Art. 8, Mo. Const.) ''that in all contested elections the ballots cast may be counted, compared with the lists of voters, and examined under such safeguards and regulations as may be prescribed by law.'' The legal prescription referred to, has, so far as the matter at issue is concerned, been definitely drawn in the contest election statute. Not only from its terms but from the illuminating interpretation given to it in Gantt v. Brown, no difficulty should be encountered in complying with it.

We do not find that the order of the circuit court, although unnecessary, so far as concerns the quashal of the first writ, to be a violation of either the spirit or the purpose of the Constitution or the statute and the objections thereto as constituting a basis for prohibition must go for naught.

, As stated in the beginning the sole matter at issue is the right of relator to the writ prayed for. The questions relevant to a determination of that matter have been discussed and resolved adversely to the prayer of the relator. With the so-called counter contest, therefore, which has been obtruded at great length into this record, we have no concern. Election contests are purely statutory. As such the letter of the law is the limit of their power. Under our statute the only semblance of authority for a counter contest is found in Section 4898, Revised Statutes 1919, which gives the party having the certificate of election, who may desire in the contest instituted, to challenge the validity of any votes cast for the contestant, to notify the latter of his purpose and specify the names of the voters and the objections he proposes to make against them. Other than as prescribed in this section the counter proceeding is without authority.

In view of all of which the writ is denied. All con cur, except *Woodson, C. J.,* who dissents in separate opinion.

WOODSON, C. J. (dissenting).—I dissent from the majority opinion for the reason that, even though Gaines, the former county clerk, did not make a return to the circuit court of his recount which he made in persuance to the writ issued by the clerk of the circuit court commanding him to recount the ballots, that is no justification for the order to be reissued for a second recount.

The remedy in such a course was clearly a mandamus against Gaines, the former county clerk. When Gaines recounted the vote, whether he made his return to the

writ commanding him to do so or not, he exhausted his or his successor's authority to recount a second time. If that recount can be made twice, why not three or any other number of times? I dissent.