KANSAS CITY to the use, etc., Respondent, v. P. McDONALD et al., Appellants.

Kansas City Court of Appeals, January 24, 1898.

Limitation: KANSAS CITY'S FREEHOLDERS' CHARTER: BOARD OF PUBLIC WORKS: ACCEPTANCE. Under the freeholders' charter of Kansas City the board of public works represents the city in the acceptance of street improvements and the time within which laborers may begin their action against the contractor and his sureties begins to run from the date of such acceptance, and the fact that the city engineer subsequently made a record accepting such work is of no avail.

*Appeal from the Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

REVERSED.

*L. A. Laughlin* for appellants.

The evidence shows that the work was accepted by the city more than three months prior to the commencement of this action, hence it can not be maintained. Charter, art. 4, sec. 20; Maxwell on Code Pl., p. 86; Chitty on Pl. [16 Ed.] 386.

*H. S. Hadley* and *Cyrus Crane* for respondents.

It is evident that the common council could, by ordinance, confer on the board of public works the duty of accepting this work, and it could also confer

that duty on the city engineer, as was done in this case. The contract provides: And the said party of the first part further agrees that he will not be entitled to receive payment for any portion of the aforesaid work or material until the same shall have been fully completed in the manner set forth in this agreement, to the satisfaction and acceptance of the city engineer. And that he will then receive payment, etc. The contract further provided: "To prevent all disputes and litigation, it is further agreed by the parties hereto that the city engineer shall in all cases determine the amount and quantity of the several kinds of work which are to be paid for under this contract; and he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor, and his estimates and decisions shall be final and conclusive." Thus it will be seen that the decision of the engineer and his acceptance of the work was a part of the consideration of the contract, and the sureties on this contract are entitled to his action before their liability becomes fixed. *Williams v. R'y*, 112 Mo. 413, 487; Charter, art. 9, secs. 6, 20.

GILL, J.—This is an action brought in the name of Kansas City to the use of certain laborers who did work in grading a street for which defendant McDonald had a contract. The other defendants were McDonald's sureties on the contract, STATEMENT. wherein, according to the city charter, the contractor covenanted to pay for all labor and materials furnished in the prosecution of the work and defendants Russel and Wyman signed the contract as guarantors that said covenant should be performed. The circuit court sent the case to a referee with authority to find the facts and declare the law. The referee found that McDonald, the contractor, was indebted to

all the plaintiffs except one for the amounts claimed, but held that the sureties were not liable because the action was not commenced within the time prescribed in the city charter. On exceptions filed to the referee's report, the circuit court set aside the same in so far as concerned the matter of limitation, and rendered judgment against the sureties for the respective amounts due the plaintiffs, and said sureties appealed.

The sole question is one of limitation. Was the action begun within the time provided in the city charter? The right of action has its origin under the provisions of section 20, article 9, Kansas City charter of 1889, which provides that "contracts for making city improvements on streets, etc., * * * shall contain a covenant on the part of the contractor or contractors with the city, to pay for the work and labor of all laborers, etc., * * * and performance of such covenant shall be guaranteed by two or more sureties signing the contract. * * * No action shall be brought or prosecuted for the benefit of the laborers, teamsters, etc., * * * *unless the suit be commenced within three months after the completion of the work to be done under the contract and acceptance thereof by the city.*" The above italicised words of the charter must fix the rights of these litigants. It will be seen that this special statute of limitation begins to run when the work is completed *and accepted* by the city. This suit was instituted on the twenty-sixth day of February, 1896. The question is whether at that date more than three months had expired since the grading of the street was finished and accepted by the proper city authorities. If so, then the action was barred, otherwise it was not. In order to save the right of action, it is clear then that the completion and acceptance must have been not earlier than November 26, 1895.

*Marginal note:* LIMITATION: Kansas City's freeholders' charter: board of public works: acceptance.

In this connection we quote from the referee's report, and in this respect its correctness is not questioned: "According to the evidence in this case, the work was completed in the latter part of October, 1895. On November 12, 1895, a list of the property against which special tax bills were to issue for payment of the cost of grading under the contract was referred to the city assessor by the board of public works, with the request that he make and return to the board an assessment of the value of the lands, etc., describing the lands to be charged. On November 13, the assistant city engineer reported to the board of public works his estimate of the work done under the contract and computed the cost at $475.20. His report contains the following language:

" 'I hereby certify that I have caused to be carefully measured and computed the amount of work done under this contract, and that the above quantities and amounts are correct.

" 'On November 15th, 1895, the city engineer reported the contract in question completed and ready for acceptance and payment in special tax bills. (See his certificate on page 21.) I hereby certify that the above work has been completed in accordance with the specifications and recommend the acceptance of the work, and know of no reason why the tax bills should not be issued in accordance with the contract and specifications therefor.' To the same instrument, and of the same date, is the following certificate:

" 'The Board of Public works hereby accepts said work.

" 'By order of the Board of Public Works.

" 'PETER H. TIERNAN,

" 'President.

" '(Seal).   " 'Attest:   " 'H.  P.  LANGWORTHY, Secretary.'

"See, also, the testimony of R. M. Godfrey, page 13. Under date of Friday, November 15th, 1895, the city engineer certified the following contracts completed and are ready for acceptance and payment in special tax bills, 'Ordinance 6193, grading College Avenue from 24th to 26th, P. McDonald, $475.20. The Board of Public Works hereby accepts said work. The full board were present.' The testimony of Mr. Godfrey is from the record of the proceedings of the board of public works, which he had before him when testifying.

"On November 20th, 1895, the list of property to be assessed and chargeable with the cost of the work under the contract in question, which was referred to the city assessor on November 12th, was received from the city assessor, the assessment having been completed. On November 22d, the cost of grading under the contract was apportioned to the different pieces of property by the engineering department. On Tuesday, November 26th, 1895, the board of public works computed the cost of grading College avenue from 24th to 26th street as provided by ordinance 6193, approved February 28th, 1895. This is shown by the testimony of R. M. Godfrey, testifying from the records of the board of public works which he had before him. On November 26th, we also find the following entry made by the city engineer:

"'Work accepted and estimate approved for $475.20, this 26th day of November, 1895.

"'H. H. FILLEY, City Engineer,

"'Tax bills issued November 27th, 1895.

"'JOHN MALONY, Chief Clerk.'

"The above testimony is undisputed."

Mr. Fidler, the referee, then proceeds to discuss the question as to whether or not the work of the contractor was accepted by the city on November 15 or

November 26, and it seems to us he has clearly demonstrated that the date of the city's acceptance was November 15, 1895. It was on that day (November 15) the city engineer reported to the board of public works that the work was completed in accordance with the contract and recommended that the board, in behalf of the city accept the same; and said board did on that day make its certificate accepting said work and formally entered said acceptance on its record. The board of public works was the proper and legally authorized body to act on the matter; in this respect it represented the municipality. Under the city charter said board had general supervision and control of all work of that character. See article 6, Charter 1889. The city engineer was a mere employee of the board of public works (section 4 of said article 6) and appointed by it to aid in the performance of the duties enjoined upon said board by the charter. In this case, and after the work was completed, the city engineer examined the work and computed the cost thereof according to the contract, and on November 15, 1895, reported to his employer (the board of public works) that said grading was completed according to the specifications and recommended its acceptance; and, on the same November 15 the board, as the agent of the city, accepted the work. Whatever was done thereafter was merely to effect a necessary consequence of such acceptance, that is to pay for the work in special tax bills issued against the property chargeable therewith. The action of the city engineer in writing on November 26, 1895, at the bottom of the estimate of the cost of the work made by his deputy these words, "work accepted and estimate approved for $475.20" was, in so far as concerns acceptance by the city, an idle performance. The work had some time prior thereto been accepted by his superior, the board of public works; and this state-

ment by the engineer at that date neither added to nor detracted from the acceptance theretofore made.

The contention of plaintiff's counsel, based on that provision of the contract which in effect stipulates that before the contractor shall receive pay for his work the same shall be "completed in the manner set forth in this agreement to the satisfaction and acceptance of the city engineer," can have no weight in determining who, under the charter, has authority to represent the city in accepting the work. For even if we concede that the contract is subject to the interpretation given by counsel, then it is manifestly opposed to the terms of the municipal charter, and in so far as it so conflicts can have no force or effect.

We agree then with the referee that this action can not be maintained, because commenced more than three months after the work was completed and accepted by the city. It follows that the judgment, which was for the plaintiffs, must be reversed. All concur.