Appellants filed their petition in the Circuit Court of Jackson County to form a drainage and levee district under Articles I and IX of Chapter 28, Revised Statutes 1919. The petition is in due form, signed by the proper landowners in said proposed district, and asks the incorporation of 1723 acres of swamp, wet and overflowed lands lying in a contiguous body along the Missouri and Blue rivers, a part thereof being in the East Bottoms, within the corporate limits of Kansas City, and the remainder lying east of said city in Jackson County.
The city of Kansas City appeared in said cause and filed a motion to dismiss such petition or plea to the jurisdiction, on the ground that a portion of said land was within said city limits, and that said city had previously on March 24, 1922, as authorized by its freeholders' charter of 1908, enacted an ordinance, including said lands within its limits, in a levee and drainage district, wholly within said city, and that the circuit court had no authority or jurisdiction to incorporate said lands in said city with other lands outside thereof in the levee and drainage district, sought to be established by the petition filed in said circuit court; that, to construe the general statutes relied on as authorizing said proceeding, violates its charter and ordinances and violates the constitutional provisions giving such city the right to frame its own charter. The court below ruled for the city, and sustained said motion or plea and dismissed said petition, and the petitioners appealed to this court.
I. The real question before us is whether the circuit court had power or jurisdiction to incorporate a *Page 582 
drainage and levee district where part of the lands sought to be included are in Kansas City, and part thereof outsideScope of of the limits of said city, in Jackson County, uponGeneral the petition of the landowners in such district.Statutes.
Chapter 28, Revised Statutes 1919, has eleven articles relating to the general subject of reclaiming swamp lands by means of levees and drains. Several such articles relate to the incorporation of levee and drainage districts, as public corporations, upon the petition of the owners of contiguous swamp, wet and overflowed land filed in the circuit court or the county court of the county in which such lands are located. The petitioners in this case sought to establish a drainage and levee district by petition in the circuit court, under Articles I and IX of said Chapter 28. In none of the articles of said Chapter 28 is it expressly provided that upon said petition any such lands within the corporate limits of any city may be included in such district. But it is simply provided in general terms in said statutes, that contiguous swamp, wet and overflowed lands within one or more counties or townships in this State, may, upon such petition, be included in such district. Whether such districts are so incorporated by the circuit court, or by the county court, the levee or drains and other improvements intended to reclaim such wet and swamp lands are to be paid by assessments of benefits on all the lands in the district, including highways and railroads and railroad rights of way (and perhaps other public utility rights of way) according to the benefit they received from such levee and other improvements (Secs. 4390, 4611).
Article VIII of said Chapter 28 (Vol. II, R.S. 1919, p. 1487) provides for the incorporation of a joint district for draining or sewering "any area in the State of Missouri" (Section 4581) for the preservation of the public health, "if such area shall lie in part within and in part without the corporate limits of any city having a population of more than 300,000 inhabitants" — such corporation *Page 583 
to be formed by the filing of a petition by the city or the county court, in the circuit court, and ratified by a vote of the legal voters "resident in such area".
The expense for right-of-way and construction of the drains is to be paid from a uniform "special drainage tax" on all lands in the district, exclusive of highways, not exceeding one-half of one per cent in any one year on the assessed value of such land, or by bonds payable out of the funds raised by such special drainage tax (Secs. 4585, 4589).
Another provision in the Revised Statutes especially relating to cities of 100,000 inhabitants or more, is Section 7856, which authorizes such cities to contract "with drainage districts or with other public corporations in this or any adjoining state for co-operation or joint action in building sanitary sewers . . .and in constructing levees along the bank of, or shortening, diverting or otherwise improving any natural watercourse, to prevent its overflow, where the same overflow is likely to cause injury within the territorial limits of all the districts or corporations so co-operating." So, Section 7857 provides that any such city (of 100,000 or more inhabitants) may with the consent of any adjoining state, and without the co-operation of any public corporation of such state, condemn the necessary land, and construct the necessary drains and levees, to protect property, partly within the city and partly within such other state, from floods and overflow and pay for same out of its general fund or by the imposition of special taxes on the lands in the city, within the district deemed benefited.
We have never had before us a case involving the question whether lands within any city could be included with other lands outside such city in a drainage or levee district, under the provisions of Articles I and IX of said Chapter 28, Revised Statutes 1919, or similar prior statutes.
It is provided in such general statutes that in such districts formed on the petition of the landowners, the *Page 584 
construction and control of drains and levees therein shall be determined by the vote of the owners of the land and rights of way in such district, and that each landowner have one vote for each acre of land owned by him (Secs. 4600 and 4381) and that preliminary expenses should be paid by a tax of not more than twenty-five cents per acre on each acre of land in the district (Sec. 4608). These provisions would seem to indicate that large tracts of land, at least one acre in extent, were contemplated as the lands which would compose such district, that is, agricultural or rural lands. Lands in cities are usually divided into lots much smaller than one acre, consequently, city landowners could not vote or have any voice in the control of such district or improvement therein, unless they owned one acre of land in such city, which would disfranchise, in all probability, the majority of landowners in such district, if within a city. It was for this reason, no doubt, that said Article VIII, which did provide for voting on a drainage district partly within the city, provided, that the vote should be by the legal voters without reference to whether he had any land or property at all. The scheme of the general drainage and levee laws seems to relate to farming and other lands outside of incorporated cities, except said Article VIII and Sections 7856 and 7857. In State ex rel. v. Drainage Dist., 236 S.W. 16, opinion by RAGLAND, J., the court refers to such general drainage and levee laws, as providing for "rural drainage." But, however that may be as to cities in general (which we need not decide), we think that the provisions of Article VIII of said Chapter 28 and said Sections 7856 and 7857 show that the Legislature assumed that cities of 100,000 and 300,000 or more had authority by their charters to build levees and drains within their corporate limits and were not deprived of that authority by the general statutes relating to drains and levees, and only required authority from the State to build or acquire drains and levees, or to co-operate and contract with levee and *Page 585 
drainage districts outside of the city, in this or another state, to effectually protect the health and property of their citizens from excessive floods or waters, however occasioned. Such provisions of the general statutes negative the idea that the general law intended that any such outside drainage or levee district could be formed, by the petition of landowners, under the general statutes, to embrace lands within any city of 100,000 or 300,000 inhabitants or more, with lands outside of such city. This could be done only by the petition of the city itself, or the county court, under said Article VIII, and then for sanitary drainage purposes only, as therein provided, and not for levees also, which are not authorized by said Article VIII.
II. But we also hold that, even if said general statutes would authorize this proceeding, in the absence of a provision in the Kansas City charter on the subject, the charter provision of Kansas City providing for such levees and drainsScope of within the city is a matter of local municipalCharter concern, and, therefore, properly included in suchProvisions. charter and controls the establishment of levee and drainage districts in said city. Learned counsel do not controvert the proposition that if it is essentially a matter of local concern it might be constitutionally inserted in such freeholders' charter. But they strenuously insist, that the making of drains and levees is a matter of general public concern of the state at large, and not of essentially local concern, as shown by the general drainage and levee laws, because the drainage and levee districts provided for by such laws are expressly made public corporations, and, therefore, they are mere arms or branches of the state government, the same as public school districts. [State ex rel. v. Drainage Dist., 236 S.W. (Mo.) 15.]
While, it is true, that said general drainage and levee laws so contemplate and provide, as to the districts *Page 586 
therein provided for, it does not follow that levees and drains exclusively within cities may not be essentially a matter of local municipal concern, and provided for in the freeholders' charter of Kansas City, authorized by Section 16 of Article IX of the State Constitution, which charter must "always be in harmony with and subject to the Constitution and laws of this State."
The creation of sewers and drains within cities, and levees also, which accomplish the same purpose, is one of the elementary functions of a local or municipal government. "The construction . . . of a system of sewers for a municipality is clearly a municipal function." [3 Dillon, Mun. Corp. (5 Ed.) sec. 1148.] "Logically all those are strictly municipal functions which specially and peculiarly promote the comfort, convenience, safety and happiness of citizens of the municipality, rather than the welfare of the general public." [28 Cyc. 269.]
So essential are sewers to the hygiene and sanitation of municipalities, that the rule of strict construction is relaxed in construing their powers to construct sewers. [9 R.C.L. p. 621; McMurry v. Kansas City, 283 Mo. l.c. 493.]
Indeed, it may be said to be a matter of common knowledge that all cities of any considerable population in this State have from the earliest time, either by special charter or general law, been authorized to construct sewers, and levees belong to the same class of necessary local municipal improvements. Sewers are of a more local character and concern than streets in a city. [Donohoe v. Kansas City, 136 Mo. l.c. 667.] And, it is well settled that streets are of such local concern that the freeholders' charter of Kansas City may contain its own special provisions for opening and grading streets, although they conflict with the general law relating to cities on that subject. [State ex rel. Kansas City v. Field, 99 Mo. 352; Kansas City v. Marsh Oil Co., 140 Mo. 458.] We have also made the same ruling as to primacy of *Page 587 
the charter over the general state law relating to the establishment and maintenance of parks in said city. [Kansas City ex rel. v. Scarritt, 127 Mo. 642.] We must, therefore, rule that the charter provisions of said city relating to the establishment of levees and drains within said city are a matter of essential local municipal concern, properly contained in the freeholders' charter of Kansas City, and prevail over the general law on that subject, if there is any difference or conflict between them.
There is nothing to the contrary in the cases cited by learned counsel for appellant. They cite Ewing v. Hoblitzelle, 85 Mo. 64, pertaining to election commissioners; St. Louis v. Meyer,185 Mo. 583, pertaining to peddlers; State ex rel. v. Telephone Co.,189 Mo. 83, relating to fixing telephone rates; Peterson v. Railroad,265 Mo. 462, concerning the crossing of railroads by street railways; State ex inf. v. Koeln, 270 Mo. 187, relating to the election of collector; and Kansas City v. Field, 270 Mo. 500, relating to executions issued on judgments in the circuit court for park assessments. In all these cases just cited, the State law was held to prevail, over the freeholders' charter, becausethe subject of the legislation was of a general state-wideapplication and not municipal or local in any respect. While the state drainage and levee districts are public corporations, they are local public corporations and also, in a sense, municipal corporations, and relate to municipal matters. [State ex rel. v. Drainage Dist., 236 S.W. (Mo.) 15.] The above authorities cited by appellant recognize that general municipal laws as to municipal matters may be superseded, as to said city, by provisions in the freeholders' charter of Kansas City. In the Field case, supra, 270 Mo. 514, the court said, quoting from the Marsh Oil case, supra: "So long as Kansas City, under its special charter, does not invade the province of general legislation, or attempt to change the policy of the State as declared in her lawsfor the people at large, it will not be held to be out of harmony with such laws, notwithstanding the provisions *Page 588 of the special charter may be different from the generalstatutes prescribed for the government of other cities in theirlocal affairs." (Italics ours). The same language, in effect, is used in Peterson v. Railroad and other cases cited by appellants. In McGhee v. Walsh, 249 Mo. l.c. 280-81, it was expressly held that the provisions in the freeholders' charter of Kansas City as to sewers (which would also apply to drains and levees) was authorized to be inserted therein by the Constitution, and had "the same force as if they had been enacted into a statute by the General Assembly of the State."
We must rule this point against the appellants.
III. Learned counsel for appellants also make objections to the constitutionality of said charter provisions, on other grounds. The charter provisions consist of 27 sections, and provide generally for the creation of levee and drainageConstitutional districts in the city by ordinance. The drainsProvisions. and levees are to be paid for out of the general fund of the city, or by special assessments for benefits upon the private lands in the district.
The objections of appellants are as follows: "(a) that said charter is not due process of law wherein it undertakes to authorize the Board of Public Works to estimate and calculate the cost of construction without notice or hearing;" (b) that the jury must find the cost of the work exactly, as determined by the Board of Public Works; (c) that the court must render judgment for benefits based on such fixed estimate; (d) because such charter allows the jury to assess the amount of benefits to the city at large, the same as in cases to condemn land for a street; (c) because it allows such district to be created summarily by ordinance.
While it is true, such estimate is by the charter made conclusive, as one of the items of the cost of the improvements, yet the property owners are not to be assessed for any greater sum than their land is specially benefited *Page 589 
thereby. The jury is required by Section 6 to first "estimate the amount of benefit to the city at large," and then "estimate the value of the benefit of the proposed improvements to each and every lot, piece and parcel of private property, exclusive of buildings and improvements thereon within the district, if any benefit is found to accrue thereto." If the total benefits to the city at large and to the private property exceed the estimated cost of the work, then it is, in substance, provided a pro rata reduction must be made in the assessment for benefits against the private property. The property owners affected are given notice, and there is a trial by jury of six freeholders, for the assessment of benefits and damages, the same as in proceedings to establish parks.
It would seem that such charter provisions are not subject to any of the objections made thereto by learned counsel. No property can be assessed with more benefits than it actually receives, notwithstanding the estimate of the cost made by the Board of Public Works is conclusive, and cannot be inquired into. The work is required to be let by contract to the lowest bidder and such estimate of the cost, in no way increases the assessments, or affects the property owners to their disadvantage. That a city may establish a sewer or other improvement district and fix the boundaries within which private property may be assessed with benefits by ordinance, has frequently been affirmed by this court. [McMurry v. Kansas City,283 Mo. 479; McGhee v. Walsh, 249 Mo. 283; State ex rel. v. Thomas, 278 Mo. 98; City of Caruthersville v. Ferguson, 226 S.W. (Mo.) 912.] We find nothing unconstitutional pointed out in said charter provisions.
IV. Appellants also contend that the cost of levees and drains, owing to the topography of the land, will be greatly increased, if the city proceeds to levee and drain the landExcessive within its limits, separately from the lands outsideCost. thereof. But this is a matter of expediency or judgment, on the part of the *Page 590 
city, in the exercise of its power, which has no bearing on the validity of said charter provisions or the ordinance providing such levee district within the city.
V. The trial court reached a correct conclusion in holding that property within the corporate limits of Kansas City, Missouri, could not be legally included within the boundaries of the proposed district, yet it went too far in dismissingJudgment. the action, as the petitioners may be able to show that a satisfactory district can be established without including within the boundaries thereof any of the property aforesaid within the corporate limits of Kansas City, Missouri.
The judgment below is accordingly reversed and remanded with directions to dispose of the case in accordance with the views heretofore expressed. Higbee, C., not sitting.