# KANSAS CITY to Use of INGALLS STONE COMPANY, a Corporation, Appellant, v. NEW AMSTERDAM CASUALTY COMPANY, a Corporation, Respondent.*

Kansas City Court of Appeals. March 2, 1925.

1. **PRINCIPAL AND SURETY: Rule of Strictissimi Juris Does Not Apply to Compensated Surety.** The rule of *strictissimi juris* does not apply to compensated surety.

2. **CONTRACTS: Construction: Construction Which Will Carry Out Evident Purpose for Which Contract Was Entered into Will be Adopted.** Where an obligation is susceptible of two constructions, one of which would leave obligee without remedy and the other would carry out evident purpose for which contract was required and entered into, the latter will be adopted rather than the former.

3. **MUNICIPAL CORPORATIONS: City Under Its General Power to Contract May Require Contractor to Give Bond for Payment of Labor and Materials.** A city, under its general power to contract, may, without express statutory authority, require a contractor to give bond for payment of such person as shall supply materials or furnish labor.

4. ———: **Action on Surety's Covenant in Contract for Public Work Guaranteeing Payment of Labor and Materials Held Barred by Limitation.** In an action upon surety's covenant in a contract for public work guaranteeing payment of labor and materials used in construction of park improvements for Kansas City, *held* barred by section 19, Article 8, of Charter of Kansas City, 1909, providing that no action for benefit of laborers, etc., or parties furnishing materials, shall be brought or prosecuted unless commenced within three months after completion of work and acceptance thereof by city, which is applicable to section 31 of Article 13, relating to Park and Boulevard improvements.

5. ———: **Provision in City Charter Requiring Suit to be Brought Within Three Months after Completion and Acceptance of Public Work, Held Not Arbitrary or Opposed to Policy of General Laws.** Provision in City Charter requiring suit for labor and materials furnished in construction of park improvements to be brought within three months after completion and acceptance of work, *held* not arbitrary or unjust, but founded in reason for public welfare and not opposed to policy of general laws.

6. **APPEAL AND ERROR: Constitutional Question Not Seasonably Raised Where it Appeared for First Time in Appellant's Brief on**

**Appeal.** Where attempt to raise constitutional question appeared for first time in appellant's brief on appeal, no such contention being made in trial court, *held* such constitutional question was not seasonably raised.

7. ———: **Appeal Can be Taken Without Motion for New Trial.** An appeal can be taken without a motion for new trial.

8. ———: **Motion for New Trial Must be Filed if Record is to Show Raising of Constitutional Question in Trial Court.** Motion for new trial must be filed if appellant desires to have record show the raising of a constitutional question in trial court.

---

*Corpus Juris-Cyc. References; Appeal and Error, 3 C. J., p. 710, n. 73; p. 711, n. 79; p. 960, n. 79. Contracts, 13 C. J., p. 539, n. 12. Municipal Corporations, 28 Cyc., p. 1023, n. 34; p. 1039, n. 31; p 1042, n. 68. Principal and Surety, 32 Cyc., p. 307, n. 92.

Appeal from the Circuit Court of Jackson County.—
*Hon. James H. Austin,* Judge.

Affirmed.

*W. E. Clark, W. S. McClintock, A. L. Quant* and *F. K. Ferguson* for appellant.

*Turpin & Behrendt* for respondent.

TRIMBLE, P. J.—This action was brought in the name of Kansas City by Relator, Ingalls Stone Company, an Indiana Corporation, against the defendant, a New York Corporation authorized to do business in Missouri as a Surety Company for hire, on its covenant in a contract for public work guaranteeing payment of labor and materials.

The contract was one entered into by Kansas City through its Board of Park Commissioners, with the George W. Huggins Construction Company, for the erection of a Pavilion in Swope Park. Defendant signed the contract as surety and guaranteed therein that the Construction Company would ''pay for the work and la-

bor of all laborers, subcontractors and teamsters, teams and wagons employed on the work *and for all materials used therein,* and if the cost of such work and labor and material are not paid in full by the said party of the first part (the Construction Company), then the said parties of the second part . . . (one of whom was defendant) . . . agree to pay for said work, labor and materials, or any part thereof, which shall not be paid by said first party within ten (10) days after the money for said work, labor and materials becomes due and payable, and this provision shall entitle any or all laborers, subcontractors and teamsters and owners of teams and wagons who may do work, and parties who may furnish materials on or for the improvements to be done under this contract, to sue and recover from said second party . . . the amount due and unpaid . . . but (said guarantor) . . . shall not be liable on this guarantee on account of the materials used and labor done upon said work beyond the sum of . . . $17,800 the estimated cost of material used and labor done upon said work.''

The petition alleges the execution of the contract, the approval thereof by the city authorities and the appropriation, by ordinance, of the sum of $17,800 to pay for the improvement. It further alleges that the same was constructed by the Construction Company in accordance with the plans and specifications; that relator supplied certain stone pillars and caps for which an unpaid balance of $994.54 yet remains due and for which suit was brought.

The petition further alleged that the Pavilion was completed shortly before January 2, 1918, and was on that date accepted by the city, and final payment was made thereon to the Construction Company on that date; but that relator has not been paid, and thereafter demand was made of defendant to pay same but payment thereof was vexatiously refused.

The petition was filed October 17, 1923, which, as will be observed, is more than five years after the accrual of the cause of action.

Defendant filed a demurrer to the petition, the only basis of which that need be considered here is that "the action was not instituted within the time required by law."

The trial court sustained the demurrer and, plaintiff refusing to plead further, judgment was rendered for defendant, whereupon plaintiff filed affidavit and was allowed an appeal.

The controversy over whether the suit was brought in time does not involve the question whether the suit is barred by the ordinary Statute of Limitations, but is over the question whether it is barred by a special limitation contained in the city charter.

The provisions relied upon by defendant are contained in section 19, article 8 and in section 31 of article 13 of the Charter of Kansas City, 1909.

Section 19 of article 8, on "Public Improvements," is as follows:

"Contracts for making city improvements on streets, sidewalks, avenues or alleys or for constructing sewers, let to the lowest and best bidder, shall contain a covenant on the part of the contractor or contractors with the city to pay for the work and labor of all laborers, subcontractors, and teamsters, teams and wagons employed on the job, and for all materials used therein, and performance of such covenant shall be guaranteed by good and sufficient sureties signing the contract, whose sufficiency shall be approved by the City Comptroller, but who shall not be liable beyond the estimated cost of the materials used and the labor done upon the job, to be stated in the contract; *Provided*, That the city shall not be liable for the sufficiency of the contractors or sureties, nor for any failure to comply with or irregularity in complying with this provision. Laborers, subcontractors and teamsters and owners of teams and wag-

ons who may do work, and parties who may furnish materials stipulated for by any such contract, may recover in an action in the name of the city for their use (in which no cost shall be adjudged against the city and all costs not adjudged against the defendant shall be adjudged according to equity against the persons for whose use the suit may be presented), all money due them for labor and materials, or either, not exceeding the estimated cost of the labor and materials as stated in the contract; and such recovery may be had against the contractor and sureties, or either, as in chancery; but it shall not be necessary to file with the petition the original contract. Suit may be brought for the benefit of all laborers, subcontractors, teamsters and owners of teams and wagons on the job, and for materials used in the performance thereof, and the amount due them to be ascertained by the court or referee, unless the court direct an issue to be tried by a jury; pending the suit, laborers, subcontractors, teamsters and owners of teams and wagons, and parties who have furnished materials for the performance of the contract, not mentioned in the petition, whether they have done work or furnished materials before or after the commencement of the suit, may become parties to the proceedings by appearing and filing in the action a written statement of their demand. Such notice thereof as the court may direct shall be given to the defendants, and reasonable opportunity to defend shall be given. The proceedings shall, as far as practicable, be governed by the rules and principles of courts of chancery, so as to afford speedy and adequate relief according to the spirit and letter of this section. Judgments shall be rendered for the estimated cost of labor and materials as stated in the contract, and execution shall be awarded and issued for the aggregate amount found due the laborers, subcontractors, teamsters and owners of teams and wagons, and the parties who have furnished materials, not exceeding the estimated cost in the contract, which shall be collected, with costs. The

money shall, after paying costs, be divided and paid *pro rata* among those for whose use the judgment may be rendered. The court shall decide all questions as to distribution summarily on motion. *No action shall be brought or prosecuted for the benefit of laborers, subcontractors, teamsters or owners of teams and wagons, or parties who have furnished materials on the contract, unless the suit be commenced within three months after the completion of the work to be done under the contract and acceptance thereof by the city,* nor shall such action be brought before such completion and acceptance, unless the court find good cause therefor according to the averments in the petition. Suits shall be brought in some court of competent jurisdiction in Jackson county, if jurisdiction of the proper parties can be obtained in the county.''

Section 31 of article 13 on ''Department of Parks and Boulevards'' gives the Board of Park Commissioners power to make park improvements in such manner and at such times, and with such material, as the said Board may determine, and to pay for such work or improvements, or any part thereof, out of the funds not otherwise appropriated, belonging to the park district in which said work or improvement is done or made, or out of the general park fund.

And the second paragraph of said section reads as follows:

''The contract for doing the work of construction and furnishing material for any such improvement shall be let by said Board of Park Commissioners to the lowest and best bidder therefor in the same manner and subject to the same rules and regulations as similar work not under the control of the Board of Park Commissioners is let by the Board of Public Works, and all such work shall be done under the supervision and control of the Board of Park Commissioners.''

Appellant's point is that section 19 does not relate to ''Boulevard and Park Improvements'' but only to con-

tracts for making "city improvements on streets, side-walks, avenues or alleys or for constructing sewers" and creates a complete scheme and method of procedure whereby the contractor of such improvements is required to give a bond securing payment for all labor and materials used in such improvements and whereby all materialmen and laborers might jointly prosecute their claims against the bond in the name of the city, and in that special procedure a special three months' period of limitation is given for the commencement of suits; that the second paragraph of section 31 of article 13 does not adopt and make applicable the *scheme of procedure* and the *limitation* of section 19, for materialmen and laborers having claims arising under contracts for improvements of Parks and Boulevards, but merely provides that the manner, rules and regulation of *letting the contract* provided in section 19 should govern the method of *letting the contract* in Park Improvements; that the second paragraph of section 31 does not incorporate therein by reference or otherwise the provisions of section 19 relating to the rights of materialmen and laborers which may arise *after* the contract is let, but is confined solely in its operation and effect to those provisions of section 19 and other sections of article 8 which relate to the formalities to be pursued in letting the contract.

A further contention is made that the petition pleads a bond different from the obligation or covenant called for in section 19, because the latter limits the obligation of the contractor and his surety to pay for materials, etc., actually *used* in the improvement, whereas the petition pleads a bond to pay not only for the labor and materials *used* in the improvement but also for all *furnished* the contractor for the purpose of being used; that consequently the bond in this case, being different from the one called for in section 19, is not a charter bond but is a common-law bond, and therefore suit thereon is governed solely by the ordinary period of limitation provided in our statutes.

219 Mo. App.—19.

It is true the petition seeks to recover not only the price of the stone caps and pillars *used* in the work but also the price of four that were sold to the contractor but were broken by the railroad while in transit and which did not go into the pavilion; but we fail to find anywhere in the covenant on which the petition is based any agreement to pay for material furnished, but *not* used, in the improvement. We are unable to see how the fact that the petition alleges a broader cause of action than the contract or covenant pleaded will support, can be relied upon to show that the covenant sued on is not one made under the City Charter or that the suit is not governed by the provisions thereof. Of course, the surety being a compensated surety, the rule of *strictissimi juris* does not apply. [Lackland v. Henshaw, 256 Mo. 133, 140; Rule v. Anderson, 160 Mo. App. 347; United States, etc., Guaranty Co. v. Cochrane, 142 Pac. 687.] And where an obligation is susceptible of two constructions, one of which would leave the obligee without remedy and the other would carry out the evident purpose for which the contract was required and entered into, the latter will be adopted rather than the former. [Atlantic Trust, etc., Co. v. Laurinburg, 163 Fed. 690, 695; Webster v. Dwelling, etc., Ins. Co., 53 Ohio St. 558; 1912-B, Ann. Cas., p. 1087.] But we are unable to find anything in the covenant of guaranty which makes it susceptible of two constructions with reference to the materials for which payment is guaranteed. Hence the question of whether this suit is to be controlled by the three months' limitation of section 19, article 8 of the Charter or by the ordinary Statutes of Limitation, is not to be affected by the manner in which the pleading is drawn.

It is perhaps true that the city, under its general power to contract, may, without express statutory authority, require a contractor to give bond for the payment of such persons as shall supply materials or furnish labor. [2 Dillon on Munic. Corp., 1266; City of St.

Louis v. Von Phul, 133 Mo. 561, 566, 568; Clatsop County ex rel. v. Feldschau, 18 A. L. R. 1221.] But that is not the situation here. No such bond was entered into which went beyond the provisions of the city charter requiring a bond. And along with those charter provisions was a farther provision that "No action shall be brought or prosecuted for the benefit of . . . parties who have furnished materials on the contract, unless the suit be commenced within three months after the completion of the work to be done under the contract and acceptance thereof by the city." The covenant sued on was made in connection with the construction of a city improvement within the city limits; and everybody furnishing materials for such improvement had notice of the charter provision governing the remedy for nonpayment and that they had only such remedy against the surety as the charter gave, and must proceed to enforce same within the time limited.

We think it is manifest that the contract was obtained and given in compliance with the terms of the charter. Article 8 relates to public improvements and especially to those contracted for by the Board of Public Works; and section 19 says such contracts "shall contain a covenant on the part of the contractor or contractors with the city, to pay for the work and labor . . . and for all materials used therein, and performance of such covenant shall be guaranteed by good and sufficient sureties signing the contract . . . but who shall not be liable beyond the estimated cost of the materials used," etc. And section 31 of article 13 says: "The contract for doing the work of construction and furnishing material for any such improvement (Park and Boulevard Improvements) shall be let by said Board of Park Commissioners to the lowest and best bidder in the same manner and subject to the same rules and regulations as similar work not under the control of the Board of Park Commissioners is let by the Board of Public Works."

It is putting too narrow a construction on the above charter provision to say that it refers solely to the letting of the contract. That feature is covered by the requirement that the contract shall be let to the lowest and best bidder and *in the same manner* as other contracts. The further provision that it shall also be "subject to the rules and regulations" is not a mere tautological repetition of the meaning already expressed, but broadens the scope of the requirement to include all the features controlling the contract in section 19. There is no ground for saying that such provision does not look to anything *after* the contract is let, for there is nothing necessary, in the very nature of things, to be known about what takes place after the contract is let, in order to provide for a contract securing the future rights of laborers or materialmen, or to require them, if desiring to enforce their rights, to sue within a certain time.

The contract containing the covenant sued on herein follows the charter provision in every one of its requirements and is found in the contract for the work, made in pursuance of such charter provision. It is not even in the *form* of a bond securing the rights protected therein; and hence there is likewise no reason for treating it as a common-law bond for the payment of the materials used. In fact the suit was brought in the name of the city to the use of relator in strict accordance with the requirement in that regard contained in section 19. In Kansas City to use, etc., v. McDonald, 73 Mo. App. 439, it was held that under this provision of the city charter laborers suing for work done on street improvements are required to bring suit in three months; and as stated above, we see no reason for holding that the charter provision does not also apply to the materials sued for herein.

Such provisions are useful and necessary, taking the place, in regard to *public* work, of similar provisions safeguarding similar rights in *private* work contained in materialmen's and mechanics' lien laws, where a

special limitation of ninety days is provided for bringing suit. And in deciding such cases, the analogies furnished by the ordinary mechanic's lien laws are followed. [Kansas City to use, etc., v. Goumans, 213 Mo. 151, 178.]

There is nothing in the nature of things making it a hardship or injustice on those seeking to enforce such covenants as these to require them to bring suit within a certain time after the work has been completed and accepted. Under plaintiff's theory, suit could be delayed for almost ten years after the work was done, which would be long after witnesses have gone, public officials have changed, and nobody is left to know the facts. Such would create an intolerable situation and would result in greatly increasing the difficulty and cost of getting such public work done. The provision in the city charter requiring suit to be brought within three months is, therefore, not an arbitrary or unjust measure but one founded in reason and for the public welfare. Nor is it opposed to the policy of our general laws; and similar special provisions have been upheld. [Stevens v. Kansas City, 146 Mo. 460; Brunn v. Kansas City, 216 Mo. 108, 117, 120; State ex rel. v. Field, 99 Mo. 352, 356; Kansas City ex rel. v. Scarritt, 127 Mo. 642, 657; Good v. Johnson, 299 Mo. 186, 192; Meriwether v. Kansas City, 259 S. W. 89, 91-92.]

It would seem that the foregoing authorities answer appellant's contention that, if the charter limitation applies, it is void because in violation of section 1, article IV of our State Constitution. However, this would, perhaps, be for the Supreme Court to determine, had such so-called constitutional question been seasonably raised; but it was not. It appears for the *first* time in the last point raised in appellant's brief. No such contention appears to have been raised in the trial court. It could at least have been presented in a motion for new trial, if not sooner; but no motion for new trial was filed. While an appeal can be taken without a motion for

new trial (Newton v. St. Louis, etc., R. Co., 168 Mo. App. 199, 202), yet in fairness to the trial court one should have been filed, and must be filed if appellant desires to have the record show the raising of a constitutional question in the trial court. Our Supreme Court holds that a constitutional question which could have been raised sooner but was not raised until in briefs on appeal will not give the Supreme Court jurisdiction. [Hydraulic Press Brick Co. v. Lane, 205 S. W. 81.] That court has further held that a constitutional question must be urged in a case at the earliest possible moment that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived. [Williams v. Short, 263 S. W. 200.] For the above reasons, we cannot accede to the contention of appellant that if we do not agree to its construction of the city charter, we must transfer this case to the Supreme Court; instead of this, the judgment is affirmed. All concur.